OTTUMWA HOUSING AUTHORITY,
Appellant,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, Appellee.

No. 91–1955.

Supreme Court of Iowa.

Feb. 17, 1993.

F. Richard Lyford of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellant.

John B. Grier of Cartwright, Druker & Ryden, Marshalltown, for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

This breach of contract action essentially involves an insurance coverage question. The district court sustained the insurer's motion for summary judgment, concluding that there was no coverage and no corresponding duty to defend. Given these conclusions, the district court determined that the insured's bad faith claim against the insurer was moot. The insured appealed. After considering the contentions and arguments of the parties on these issues, we affirm.

I. *Background Facts and Proceedings.*

Joyce Kay Streeby and Lisa White Evans were employed by the Ottumwa Housing Authority. The executive director of OHA at that time was Ted Simpson.

OHA was insured by State Farm Fire and Casualty Company. State Farm had issued to OHA two liability policies: (1) a general liability policy, and (2) a workers compensation and employers liability policy.

In September and October 1987, Streeby and Evans advised OHA that they were asserting claims against it based on Simpson's alleged sexual harassment. OHA passed this information on to State Farm which investigated the claims.

On October 15, 1987, Streeby and Evans filed complaints regarding Simpson's conduct with the Iowa Civil Rights Commission. OHA forwarded copies of these complaints to State Farm.

After receiving advice from its lawyers, State Farm denied coverage under the general liability policy for the civil rights sexual harassment claims. A short time later, State Farm likewise denied coverage under the workers compensation part of the second liability policy.

Several months later Streeby filed for workers compensation. State Farm retained as its defense lawyers the same firm that had advised it to deny coverage under the general liability policy.

While Streeby's workers compensation claim was pending, Streeby and Evans filed a state court petition and a federal court complaint against OHA, Simpson, and the city of Ottumwa. The petition and complaint alleged identical claims of sexual harassment based on Simpson's alleged conduct. OHA forwarded the petition and complaint to State Farm. State Farm again sought advice about coverage concerning the two civil suits from the same firm that was representing it in the workers compensation proceedings.

Meanwhile Streeby dismissed her workers compensation proceeding. One day later State Farm's lawyers advised it that neither the general liability policy nor the workers compensation policy afforded coverage for the sexual harassment claims asserted in the state and federal lawsuits. Shortly thereafter, State Farm denied coverage and refused to defend OHA and Simpson in the state and federal lawsuits.

OHA then hired separate counsel for itself and Simpson to represent them in the state and federal cases. While these cases were pending, OHA filed this suit seeking a declaratory judgment that the policies afforded coverage and imposed a duty on State Farm to defend.

Eventually OHA, Simpson, and the city of Ottumwa reached a settlement with Streeby and Evans in the state and federal lawsuits. Following this settlement, OHA amended its pleadings in the declaratory judgment action. The amendment alleged a breach of contract, seeking damages for State Farm's (1) denial of coverage for sexual harassment claims in the two civil suits, (2) failure to defend those suits and (3) bad faith. The amendment sought judgment against State Farm for all amounts that OHA paid in settlement and defense of the state and federal lawsuits. The district court sustained State Farm's motion for summary judgment on these issues, and this appeal followed.

## II. *Standard of Review.*

Summary judgment is appropriate under Iowa Rule of Civil Procedure 237 only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Colton v. Branstad*, 372 N.W.2d 184, 187 (Iowa 1985). No fact question exists if the only dispute concerns the legal consequences flowing from undisputed facts. *Brown v. Monticello State Bank*, 360 N.W.2d 81, 84 (Iowa 1984). In such circumstances, summary judgment is proper. *Jacobs v. Stover*, 243 N.W.2d 642, 643 (Iowa 1976). On appeal of a summary judgment ruling, then, we must decide (1) whether a genuine issue of material fact exists, and (2) if the law was correctly applied. *Hernandez v. Farmers Ins. Co.*, 460 N.W.2d 842, 843 (Iowa 1990).

## III. *Duty to Defend.*

In the general liability policy, State Farm agrees to "defend any claim or suit against the insured seeking damages payable under this policy, even though the allegations of the suit may be groundless, false, or fraudulent."

In the workers compensation part of the workers compensation and employers liability policy, State Farm agrees to "defend ... any claim, proceeding or suit against [the employer-insured] for benefits payable by this insurance." This provision goes on to say that State Farm has "no duty to defend a claim, proceeding or suit that is not covered by this insurance." In the employers liability part of this policy, State Farm agrees to "defend ... any claim, proceeding or suit against [the employer-insured] for damages payable by this insurance." This provision goes on to say that State Farm has "no duty to defend a claim, proceeding or suit that is not covered by this insurance."

Under these duty to defend provisions, our task is to compare the pleadings in the state and federal suits with the policies to determine whether an issue of potential or possible liability is generated un-der the terms of the policies. *First Newton Nat'l Bank v. General Casualty Co.*, 426 N.W.2d 618, 623 (Iowa 1988). This determination is a law question for us to decide. For that reason, we are not bound by the district court's conclusions.

## IV. *The Coverage Issues Under the General Liability Policy.*

The district court determined from the pleadings in the state and federal lawsuits that the damages alleged did not fall within the policy definitions of bodily injury and personal injury under the general liability policy. The court also determined that as to bodily injury there was no occurrence as defined in the policy. For these reasons, the court ruled there was no coverage under the policy.

A. *Bodily injury and occurrence.* The policy language relevant to our analysis of the bodily injury and occurrence issues is this:

### *Coverage L—Business Liability*

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of *bodily injury* ... caused by an *occurrence* to which this insurance applies.

. . . .

### *Section II–Definitions*

. . . .

2. [B]odily injury means bodily injury, sickness or disease sustained by any person which occurs during the policy period. . . .

. . . .

12. [O]ccurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury ... neither expected nor intended from the standpoint of the insured. . . .

(Emphasis added.)

OHA believes that the allegations of "physical illness" in the state and federal pleadings are sufficient to trigger coverage under the policy's bodily injury definition. OHA also believes the allegations as to

how those damages came about fall within the meaning of the policy's definition of occurrence. Even were we to assume OHA is correct, State Farm would be under no duty to indemnify it. This is because of the following exclusion under the policy, which State Farm relied on in the district court and relies on here:

### Business Liability Exclusions

Under Coverage L [Business Liability], this policy does not apply:

. . . .

9. to bodily injury to any employee of the insured arising out of and in the course of their employment by the insured. . . .

■ This employee exclusion clause applies regardless of whether the employer has any liability under the workers compensation law to the employee for the bodily injury. All that is required is that the bodily injury arise out of and in the course of employment. Other courts interpreting an exclusion identical or similar in language to this one have reached the same conclusion. *See Cowen v. Mercury Fin. Co.*, 607 So.2d 1067, 1068–69 (La.App.1992); *National Ben Franklin Ins. Co. v. Harris*, 161 Mich.App. 86, 87–91, 409 N.W.2d 733, 735–36 (1987); *Milbank Mut. Ins. Co. v. Biss*, 281 Minn. 260, 263–66, 161 N.W.2d 622, 624–25 (1968); *Truck Ins. Exch., Inc. v. Vassholz*, 839 S.W.2d 22, 23–24 (Mo.App. 1992); *Progressive Casualty Ins. Co. v. Marca*, 100 Or.App. 726, 729–31, 788 P.2d 490, 491–92 (1990).

■ Under our workers compensation law, "[t]o be compensable an employee's injury must occur 'in the course of employment' and also 'arise out of it.'" *McClure v. Union Counties*, 188 N.W.2d 283, 287 (Iowa 1971); Iowa Code § 85.3(1) (1989). The language "arising out of and in the course of employment" has established meaning under our workers compensation law:

"Arising out of" relates to the cause and origin of the injury. An injury occurs in the course of employment when it is within the period of employment at a place where the employee reasonably

may be performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto.

*McClure*, 188 N.W.2d at 287 (citations omitted). We think this same meaning was intended to apply to the language "arising out of and in the course of employment" in the employee exclusion clause. We say this because the exclusion pertains to work related injuries.

The pleadings in the state and federal suits allege five theories for recovery: sex discrimination, sexual harassment, retaliation, intentional infliction of emotional harm, and breach of the covenant of good faith and fair dealing. According to the pleadings, all five theories are based on conduct allegedly (1) occurring at the work place, (2) occurring during the employment of Streeby and Evans by OHA, and (3) resulting in the injuries and damages both claim. So any bodily injury Streeby and Evans may have suffered indisputably arose out of and in the course of their employment by OHA. For this reason, coverage for those injuries is barred by the employee exclusion clause.

■ B. *Personal injury.* Under Coverage L [Business Liability] of the general liability policy, State Farm also agrees to pay "all sums which the insured shall become legally obligated to pay as damages because of . . . *personal injury* caused by an occurrence to which this insurance applies" (emphasis added). The policy defines personal injury as

injury which arises out of one or more of the following offenses committed in the conduct of the named insured's business:

. . . .

b. [T]he publication or utterance of a libel or slander or *of other defamatory or disparaging material,* or a publication or utterance in violation of an individual's right of privacy.

(Emphasis added.)

State Farm thinks coverage under this definition of personal injury is limited to an offense under the law of defamation. Because Streeby's and Evans' claims do not sound in defamation, State Farm contends

their claims are not covered under the definition of personal injury.

In contrast, OHA thinks the phrase "of other defamatory or disparaging material," standing alone, embraces more than the traditional defamation offenses. OHA claims coverage under this phrase of the personal injury clause for certain comments Ted Simpson made to Streeby and Evans. These comments—subsumed within the various counts of the pleadings in the state and federal lawsuits—include "verbal abuse, sexually suggestive conversation, insults, unwanted sexual innuendoes, and other sexually harassing comments." Because these comments "belittle, put-down, and degrade," they are, OHA says, derogatory. And because these comments are derogatory, OHA concludes they disparage. As such, OHA maintains that these comments constitute "sexually harassing disparagement" resulting in personal injury under the "of other defamatory or disparaging material" phrase of that clause.

■ Unfortunately, the policy left the word "disparaging" undefined. In such cases we apply the familiar rule that

> [w]ords left undefined in a policy should be given their ordinary meaning, one which a reasonable person would understand them to mean. And in searching for the ordinary meaning of undefined terms in a policy, we commonly refer to dictionaries.

*Hofco, Inc. v. National Union Fire Ins. Co.*, 482 N.W.2d 397, 401 (Iowa 1992).

"Disparage" means, among other things, "to lower in esteem or reputation," "[to] lower in rank by action or words," "to speak slightingly of," or to "run down." Webster's Third New International Dictionary 653 (P. Gove ed.1965). With these definitions in mind, we think a reasonable person would understand the term "disparaging" in the policy to cover remarks meant to destroy or impair one's reputation. Several other jurisdictions construing the same policy language have come to this conclusion. *See American & Foreign Ins. Co. v. Church Schs. in the Diocese*, 645 F.Supp. 628, 633 (E.D.Va.1986) (policy language required allegation in underlying suit of false statement under traditional defamation torts); *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 12, 545 N.E.2d 1156, 1158–59 (1989) (third-party complaint found "reasonably susceptible" of stating a covered claim when gist of allegation was insured "somehow spoke slightingly about [the third party] and damaged [the third party's] reputation"); *Hamlin v. Western Nat'l Mut. Ins. Co.*, 461 N.W.2d 395, 398 (Minn.App.1990) (policy language "limit[ed] coverage to damages 'arising out of' defamation-type torts"); *Nichols v. American Employers Ins. Co.*, 140 Wis.2d 743, 748–50, 412 N.W.2d 547, 550 (1987) (policy language "contemplat[es] defense of defamation suits, not suits claiming damages where a defamatory statement may be involved").

None of the counts in the state and federal pleadings seek damages for injury to Streeby's and Evans' reputations. We find nothing in the record presented to suggest coverage under the personal injury clause for "sexually harassing disparagement," an alleged cause of action with which we are unfamiliar. OHA therefore had no coverage under the personal injury clause of the general liability policy.

### V. *The Coverage Issue Under the Workers Compensation and Employers Liability Policy.*

■ According to one treatise writer, workers compensation is routinely written in combination with an employer's liability policy to provide protection for those situations where workers compensation may not apply and thus avoid a gap in protection because employee claims subject to workers compensation law are generally excluded in other types of liability policies. However, the coverages are mutually exclusive. Following this distinction, coverage under a general liability policy does not extend to actions compensable only under the [w]orkers [c]ompensation laws.

7B John Appleman, *Insurance Law and Practice* § 4571, at 2 (Berdal ed.1979).

Employers liability insurance protects an employer against common-law liabilities for injuries resulting to employees. In contrast, workers compensation insurance protects the employer against liability imposed by the workers compensation acts. The workers compensation and employers liability policy here is this kind of insurance.

■■ A. *Workers compensation part of the policy*. Under the workers compensation part of the policy, State Farm agrees to "pay ... the benefits required of [the employer-insured] by the workers compensation law."

OHA thinks this provision means this: If a civil suit seeks damages that are potentially recoverable as benefits under the workers compensation law, then there is coverage under this part of the policy. OHA asserts that Streeby and Evans were seeking damages in the state and federal courts for injuries that are compensable under the workers compensation law. OHA therefore concludes that this part of the policy afforded coverage on the claims in the state and federal suits. For the reasons that follow, we disagree.

Streeby filed for workers compensation; Evans did not. Streeby later dismissed the workers compensation proceeding after filing suit against OHA in state and federal court. These suits were based on the same acts of sex discrimination that she had alleged in her workers compensation proceeding.

We think Streeby's dismissal of her workers compensation proceeding was for good reason. Contrary to OHA's contention, we think neither Streeby nor Evans had a basis for a workers compensation claim.

■■ Under our workers compensation law,

> [an] employer's immunity is the quid pro quo by which the employer gives up his normal defenses and assumes automatic liability, while the employee gives up his right to common law verdicts.

*Suckow v. NEOWA FS, Inc.*, 445 N.W.2d 776, 779 (Iowa 1989) (citations omitted). Streeby and Evans had a right of action against OHA, their employer, for sex discrimination under both state and federal law. *See* Iowa Code ch. 601A; 42 U.S.C. § 2000e, *et seq.* Indeed, both filed suits in state and federal court grounded on these laws. In these circumstances the quid pro quo for OHA's giving up its normal defenses is gone. Therefore the basis for a workers compensation claim grounded on these same discrimination claims is likewise gone.

■■ B. *Employers liability part of the policy*. There is likewise no coverage under the employers liability part of the policy. The reason is because of the following exclusion in that part of the policy:

> Exclusions
>
> This insurance does not cover
>
> . . . .
>
> 7. damages arising out of the ... discrimination against any employee in violation of law.

As we said earlier, the theories in the state and federal pleadings are grounded on sex discrimination in violation of state and federal law. The exclusion therefore clearly applies.

VI. *Bad Faith.*

■■ OHA mounts a two-prong attack in its claim for bad faith. OHA thinks State Farm acted in bad faith because (1) it had no reasonable basis for refusing to defend and (2) State Farm placed its interest ahead of OHA's interest by the way State Farm defended Streeby's workers compensation claim.

Neither contention has merit. We have concluded there was no coverage. Because there was no coverage, there was no duty to defend. That disposes of the first contention.

As to the second contention, OHA asserts there was a conflict of interest when State Farm's law firm in Streeby's workers compensation proceeding gave State Farm a coverage opinion on the state and federal lawsuits. OHA thinks this alleged conflict of interest deterred State Farm from settling Streeby's workers compensation claim. Such a settlement, OHA argues,

**730**

would have—at the very least—cut OHA's losses in the state and federal suits.

We offer no opinion on whether such a conflict of interest existed. The record shows that State Farm raised several defenses in the workers compensation proceeding that might have convinced Streeby to dismiss it.

Because there was no basis for Streeby's workers compensation claim, State Farm—under the duty to defend provision—had every right to defend the claim in the way it did.

VII. *Disposition.*

In sum we hold that there was no coverage under either policy. Because there was no coverage, there was no duty to defend under the two policies. In addition, there was no basis for OHA's claim of bad faith. For all these reasons, the district court properly granted State Farm's summary judgment motion on these issues. We affirm.

AFFIRMED.