*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KATHERINE DEVINE and THOMAS SINDORF, | ) ) ) | Supreme Court No. S-15209 |
| Appellants, | ) ) | Superior Court No. 3AN-11-10496 CI |
| v. | ) ) | O P I N I O N |
| GREAT DIVIDE INSURANCE COMPANY, PAUL CHATARI, CHRISTOPHER TODD ALLEN, and JOHN DOES I-V, | ) ) ) ) ) | No. 7009 – May 15, 2015 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Michael Cohn, Weidner & Associates, Anchorage, for Appellants. Timothy Lynch, Lynch & Associates, Anchorage, for Appellee Great Divide Insurance Company. No appearance by Appellee Paul Chatari.[1]

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I.  INTRODUCTION

A man who assisted at a concrete-pouring job was assaulted by another

---

[1]  Neither Christopher Todd Allen nor John Does I-V were ever served.

worker at the job site. The injured man filed a lawsuit against his assailant as well as both the concrete-pouring company and its owner. Although the company's commercial general liability insurer initially provided a defense attorney in the negligence action, the insurer later brought a declaratory judgment action alleging that the incident fell within the policy's employee-exclusion clause. The superior court granted summary judgment to the insurance company. Finding no error, we affirm.

## II.    FACTS AND PROCEEDINGS[2]

Thomas Sindorf and Paul Chatari operate separate concrete businesses in the Kenai Peninsula. Chatari does business under the name Complete Concrete. Chatari purchased general commercial liability insurance for Complete Concrete from Great Divide Insurance Company for the policy period from July 29, 2008 to July 29, 2009. Chatari did not purchase workers' compensation coverage.

At the time of the incident giving rise to this lawsuit there was only one concrete-pumping truck available for rent in the Sterling area. Both Sindorf and Chatari needed the truck on July 7, 2009, because they "both had jobs that day requiring the pump truck." Chatari had reserved the truck for his job, so Sindorf offered to help Chatari in order to free the truck up for Sindorf's use sooner. Chatari accepted Sindorf's offer to help; Chatari did not pay Sindorf for his work on the pour job.

Another man whom Chatari had engaged to help with the pour was Christopher Todd Allen. Chatari knew Allen; according to the allegations in Sindorf's complaint, Chatari had "provided a place to stay and a job to . . . Allen, a violent and

---

[2]    Because the case was decided on summary judgment, we state the facts in the light most favorable to Sindorf and Devine. *See Cabana v. Kenai Peninsula Borough*, 50 P.3d 798, 801 (Alaska 2002) (stating that on summary judgment the facts are viewed in the light most favorable to the non-moving party). We rely principally on the facts alleged in Sindorf's personal injury complaint in the underlying lawsuit for the facts in this insurance declaratory judgment appeal.

unstable individual with a history of assaultive behavior and criminal conduct." On the day of the incident Allen told Chatari that he "was agitated by" Sindorf's presence at the job site. Allen told Chatari that he "could not work" in Sindorf's presence. Chatari's response was to give Allen two Valium tablets in an effort to calm him down. Chatari did not warn Sindorf that Allen was angry or agitated, nor did he convey any information to Sindorf or other workers about the possibility that Allen might attack Sindorf.

Allen subsequently left the job site, but he then returned in a vehicle driven by Dave Riss. Without warning, Allen "walked unimpeded" to where Sindorf was running the concrete hose "with his back to" Allen. Other employees saw Allen "sneak up" on Sindorf but did not warn Sindorf or stop Allen because they were "unaware of the need to do anything because of the failure" of Chatari to "warn employees" to protect Sindorf. Allen attacked Sindorf, punching him "from behind in the head." Sindorf was "staggering and stunned, but was still on his feet"; Allen "walked a few feet away" then "walked back unimpeded" and hit Sindorf again, "knocking [him] down onto a concrete stake and into the wet concrete." Sindorf suffered significant injuries, including injuries to his teeth, hip, shoulders, and head. Allen then left the job site again, with Riss driving him away. Allen was charged with assault, and he was a fugitive at the time Sindorf filed suit against him.

Sindorf and his mother Katherine Devine[3] filed a personal injury action against Chatari, Complete Concrete, Allen, Riss, and various John Does. Chatari notified Great Divide of the lawsuit. Great Divide sent Chatari a letter to the effect that it would initially provide him with a defense attorney for the negligence action Sindorf filed but would seek a declaration that its policy did not cover the incident. Great Divide took the

---

[3]    We refer to the plaintiffs in the underlying action as "Sindorf" unless the context requires otherwise.

position that the incident fell under the employee exclusion of the policy because Sindorf was a "volunteer employee" and the assault happened in the course and scope of employment.

Several weeks later Great Divide filed a declaratory judgment action naming all those involved in the Sindorf litigation (except Riss) and sought a declaration of no coverage. Only Sindorf answered the declaratory judgment complaint. The superior court, in granting default against Chatari, wrote that the default was "[w]ithout prejudice to [d]efendants 'Sindorf' [sic] right to contest judgment."

Great Divide then moved for summary judgment, which Sindorf opposed. Great Divide's motion rested on its contention that Sindorf was Chatari's "employee" because the definition of "employee" in Chatari's general liability policy included volunteers, temporary and casual workers, subcontractors, and independent contractors.[4] Relying on the policy's terms Great Divide asserted that the policy "excludes bodily injury to any employee arising out of the performance of any duties related to the conduct of the insured's business."

The court granted summary judgment for Great Divide after determining that "Sindorf's bodily injuries arose out of and in the course of the performance of job duties." The court concluded that Great Divide had no duty to defend Chatari and no "duty to indemnify [him] for any resulting liability." Sindorf moved for reconsideration, arguing that Great Divide had "failed to even address 'arising out of employment' in briefing and in opening oral argument" and had failed to meet its burden of proof. The court denied reconsideration, reasoning that Sindorf could not allege both that his injuries did not arise out of his employment by Chatari and that Chatari's negligence in

---

[4] Although there was some disagreement in the superior court about whether Sindorf was an employee as defined in the policy, he has since conceded on that point.

the conduct of the business was a legal cause of those injuries. Because coverage under the policy required both of these elements, the court concluded there was no coverage.

Sindorf appeals.

## III.  STANDARD OF REVIEW

We review a grant of summary judgment de novo.[5]  Summary judgment is proper if there is no genuine factual dispute and the moving party is entitled to judgment as a matter of law.[6]  In reviewing a summary judgment motion, we draw all reasonable inferences in favor of the non-moving party.[7]  The party seeking summary judgment "has the initial burden of showing by admissible evidence that there is an absence of genuine factual disputes and that it is entitled to judgment as a matter of law."[8]  "Once the moving party satisfies its burden, the non-moving party must produce 'admissible evidence reasonably tending to dispute or contradict the movant's evidence.' "[9]

Interpretation of an insurance contract is a question of law that we review de novo, looking "to the language of the disputed policy provision, other provisions of the policy, and relevant extrinsic evidence."[10]  "[B]ecause of inequities in bargaining

---

[5]  *Parker v. Tomera*, 89 P.3d 761, 765 (Alaska 2004) (citing *Therchik v. Grant Aviation*, 74 P.3d 191, 193 (Alaska 2003)).

[6]  *Id.*

[7]  *Moore v. Allstate Ins. Co.*, 995 P.2d 231, 233 (Alaska 2000).

[8]  *Kelly v. Municipality of Anchorage*, 270 P.3d 801, 803 (Alaska 2012) (citation omitted).

[9]  *Id.* (quoting *Cikan v. ARCO Alaska, Inc.*, 125 P.3d 335, 339 (Alaska 2005)).

[10]  *Whittier Props., Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84, 88 (Alaska 2008) (citations omitted).

power, we construe coverage broadly and exclusions narrowly, in favor of insureds."[11]

Insurance contracts are construed using the reasonable expectations doctrine, under which the "objectively reasonable expectations" of an insurance applicant about the terms of the insurance contract will be honored "even though painstaking study of the policy provisions would have negated those expectations."[12] "To determine the parties' reasonable expectations, we examine (1) the language of the disputed policy provisions; (2) the language of other provisions in the same policy; (3) extrinsic evidence; and (4) case law interpreting similar provisions."[13]

## IV. DISCUSSION

### A. Overview Of Employer Insurance Policies Pertaining To Coverage Or Exclusions For Employee Injuries "Arising Out Of And In The Course Of Employment"

As relevant to this case, insurers of employers generally offer three types of insurance: (1) workers' compensation insurance to cover an insured's liabilities under state workers' compensation statutes; (2) employers' liability insurance to cover an insured's liabilities to employees for work-related injuries that do not fall within the ambit of workers' compensation statutes; and (3) commercial general liability insurance to cover other liabilities not covered by the first two products.[14]

---

[11] *Id.* (citing *Hahn v. Alaska Title Guar. Co.*, 557 P.2d 143, 144-45 (Alaska 1976)).

[12] *West v. Umialik Ins. Co.*, 8 P.3d 1135, 1138 (Alaska 2000) (quoting *State v. Underwriters at Lloyds, London*, 755 P.2d 396, 400 (Alaska 1988)) (internal quotation marks omitted).

[13] *Id.* (citation omitted).

[14] *See generally* 21 ERIC MILLS HOLMES, HOLMES' APPLEMAN ON INSURANCE § 132.5[C][1], at 66 (2d ed. 1996) (defining workers' compensation and employers' liability insurance and discussing their relation to commercial general liability

The first two types of insurance are generally sold bundled in a single insurance product termed a workers' compensation and employers' liability policy, while the commercial general liability policy is usually sold separately.[15] These two insurance products are generally based on form contracts produced by a nationwide industry association.[16] They are intended to be modular; many insureds purchase one product from one insurer and the other from a different insurer,[17] or both from a single insurer,[18] as they see fit.

The insurance products are drafted to ensure that there is no overlap and no gap in coverage among the three types of insurance.[19] Courts interpret the phrase

---

insurance). A fourth type of insurance not at issue in this case, umbrella insurance, is sometimes purchased either to insure against risks surpassing aggregate caps for risks covered by the first three types of primary insurance, or to insure against risks excluded from coverage by the first three types of primary insurance. 3 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION: COMMERCIAL GENERAL LIABILITY INSURANCE § 16.02[3][d][i]&[ii], at 16-38 to 16-39 (Jeffrey E. Thomas et al. eds., 2014).

[15] 21 HOLMES, *supra* note 14, § 132.5[C][1], at 66; 15 *id.* § 111.2(B)(1), at 121; 3 NEW APPLEMAN, *supra* note 14, § 16.02[3][a][vi][C], at 16-32; *see, e.g.*, *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 784 n.7 (Fla. 2004) ("[A] workers' compensation insurance policy often is issued together with an employer's liability insurance policy . . . .").

[16] 3 NEW APPLEMAN, *supra* note 14, at 16-2.

[17] *See, e.g.*, *Bond Builders, Inc. v. Commercial Union Ins. Co.*, 670 A.2d 1388, 1389 (Me. 1996).

[18] *See, e.g.*, *Royal Globe Ins. Co. v. Poirier*, 415 A.2d 882, 884 (N.H. 1980).

[19] Significantly in this case, however, we are not faced with the problem of a gap between the employer's workers' compensation/employers' liability policy and its general liability policy. The insurance policy purchased by Chatari and Complete Concrete at issue in this appeal is a general commercial liability policy. Chatari did not have a workers' compensation policy in effect at the time of the attack on Sindorf.

"arising out of and in the course of employment" in workers' compensation/employers' liability policies in light of the identical language in workers' compensation cases in order to ensure that no overlap or gap develops between the two halves of the workers' compensation/employers' liability policy: the insurance covering workers' compensation liability and the insurance covering certain other liabilities for employee injuries not subject to workers' compensation statutes.[20]

The same is true of courts' interpretation of the contractual phrase "arising out of and in the course of employment" in commercial general liability policies' exclusions for liability falling within the scope of workers' compensation/employers' liability coverage (whether the insured has purchased workers' compensation/employers' liability insurance or not). Courts frequently state that the commercial general liability phrase "arising out of and in the course of employment" is intended to avoid duplication of coverage or the emergence of a gap between commercial general liability and workers' compensation/employers' liability policies.[21] As a leading insurance treatise

---

[20] *See generally* 7B JOHN APPLEMAN, INSURANCE LAW AND PRACTICE § 4571, at 2 (Walter F. Berdal ed.,1979) ("[W]orkers' compensation is routinely written in combination with an employer's liability policy to provide protection for those situations where [workers'] compensation may not apply and thus avoid a gap in protection because employee claims subject to workers' compensation law are generally excluded in other types of liability policies. However, *the coverages are mutually exclusive.*" (emphasis added) (footnote omitted)); *see also, e.g.*, *Travelers Indem. Co.*, 889 So. 2d at 784 n.7 (noting that workers' compensation and employers' liability insurance are generally sold together and that the latter acts as a "gap-filler" to provide coverage for employee injuries that do not fall under workers' compensation).

[21] *See, e.g.*, *Royal Globe Ins. Co.*, 415 A.2d at 885 ("The provision first excludes coverage for 'bodily injury to any *employee* of the insured'. . . . The objective of this exclusionary clause is to avoid duplication of coverage with respect to the subject matters covered by a standard 'Workmen's Compensation and Employer's Liability Policy.' " (emphasis in original)); *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1013 (N.J. 1998) ("Aside from the plain language of the employee exclusion, the

states:

> The intent of the employment exclusion [in a commercial general liability policy] appears to be to avoid duplication of coverage provided under Workers' Compensation and Employers Liability policies. Accordingly, any interpretation of the commercial general liability exclusion that bars coverage for claims not covered under a Workers' Compensation and Employers Liability policy would appear to deny coverage erroneously and to create a gap in coverage that almost surely was not intended by the policyholder.[22]

But this comment must be understood in the context of a case where the employer policyholder has purchased *both* commercial general liability insurance *and* workers' compensation/employers' liability insurance. In such a case, it is reasonable to conclude that the employer policyholder intended to have insurance to cover an employee's injury that arose out of and in the course of employment no matter whether it is later determined that one or the other policy did not apply.

But again, in the case before us Chatari did not purchase both commercial general liability insurance and workers' compensation/employers' liability insurance; he only purchased commercial general liability insurance. Thus the "gap" that Sindorf alleges exists as a consequence of the superior court's decision is not the kind of gap the treatises and courts refer to when they speak of gaps in coverage that should be prevented through appropriate contractual interpretation. The "gap" in this case results from the fact that Chatari chose not to purchase a workers' compensation/employers'

---

presence of the workers' compensation exclusion immediately preceding the employee exclusion demonstrates that the objective of the [commercial general liability] policy was to exclude from coverage all claims — whether falling within or beyond the workers' compensation system — 'arising out of and in the course of' Picciallo's employment" because those claims would be subject to another insurance policy instead.).

[22] 21 HOLMES, *supra* note 14, § 132.5 [C][1], at 66-67.

liability policy that presumably would have covered Sindorf's injuries arising out of and in the course of his employment by Chatari.

In sum, because courts look to workers' compensation law to give meaning to the phrase "arising out of and in the course of employment" in workers' compensation/employers' liability policies, and because commercial general liability policies are designed to avoid the existence of an overlap or a gap between workers' compensation/employers' liability and commercial general liability policies, sister jurisdictions interpret the same phrase in employee-exclusion clauses in commercial general liability policies in light of the identical language in workers' compensation statutes.[23] We have found no case law holding that the contractual phrase "arising out of and in the course of employment" in commercial general liability exclusions should be interpreted *differently* from the identical phrase in workers' compensation statutes. For purposes of this appeal, we will use workers' compensation case law to interpret the meaning of the commercial general liability policy's exclusion of coverage for bodily injury "arising out of and in the course of employment."

### B. Sindorf's Injury Arose Out Of And In The Course Of Sindorf's Employment And Is Subject To The Employee Exclusion.

Great Divide argued in its motion for summary judgment that it had neither a duty to defend nor a duty to indemnify Chatari. An insurer's duty to defend is broader

---

[23] *See, e.g.*, *Gear Auto. v. Acceptance Indem. Ins. Co.*, 709 F.3d 1259, 1264 (8th Cir. 2013) ("Because this exclusionary language [arising out of and in the course of employment] is borrowed from Missouri's Workers' Compensation Act, the exclusion is given the same interpretation." (citing *Truck Ins. Exch. v. Vassholz*, 839 S.W.2d 22, 23 (Mo. App. 1992))); *Ottumwa Hous. Auth. v. State Farm Fire & Cas. Co.*, 495 N.W.2d 723, 727 (Iowa 1993) ("We think this same meaning [from workers' compensation cases] was intended to apply to the language 'arising out of and in the course of employment' in the employee exclusion clause.").

than its duty to indemnify.[24] The duty to defend exists when the facts as alleged in the underlying complaint, if proven, "would give rise to a finding of liability covered by the policy."[25] "The duty to defend is triggered if there is at least one cause of action alleged in the complaint for which there is a possibility of coverage under the policy."[26] "[W]hen a complaint is sufficient on its face to create an issue of liability covered by the policy, even though based on 'false, fraudulent, or groundless' allegations, an insurer may not look to extrinsic facts to escape its duty to defend the insured."[27] Thus to prevail on its motion for summary judgment, Great Divide was required to show that there were no disputed issues of material fact and that it was entitled to judgment as a matter of law that insurance as provided in its contract with Complete Concrete did not cover any of the causes of action alleged in Sindorf's complaint against Chatari and Complete Concrete.[28]

### 1. The superior court did not err in granting summary judgment and denying reconsideration when it interpreted the employee-exclusion clause using workers' compensation law.

Great Divide's appellate argument concerns the employee exclusion, particularly the broad definition of "employee" in the policy; similarly, its argument in

---

[24] *Brannon v. Cont'l Cas. Co.*, 137 P.3d 280, 284 n.11 (Alaska 2006) (citations omitted).

[25] *State, Dep't of Transp. & Pub. Facilities v. State Farm Fire & Cas. Co.*, 939 P.2d 788, 792 (Alaska 1997) (citing *Afcan v. Mut. Fire, Marine & Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979)).

[26] *Id.* (citing *Sauer v. Home Indem. Co.*, 841 P.2d 176, 181 (Alaska 1992)).

[27] *Afcan*, 595 P.2d at 645 (citations omitted).

[28] We observe that Great Divide complied with its duty to provide defense counsel, and subsequently filed a declaratory judgment action to determine whether the policy provided coverage for the incident.

support of its motion for summary judgment focused on Sindorf's status as an employee as defined in the insurance contract rather than the manner in which the injury arose. Sindorf argues on appeal that, even assuming he fell within the contract's definition of "employee," Great Divide did not meet its burden of proof with respect to the question whether his injury arose out of and in the course of either his employment by Chatari and Complete Concrete or performing duties related to the conduct of Chatari's business.

The general liability insurance contract between Chatari and Great Divide provided as follows:

> **A**. Exclusion **e. Employer's Liability** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is **replaced** by the following:
>
> This insurance does not apply to:
>
> **e.** **Employer's Liability**
>
> "Bodily injury" to:
>
> (1) An "employee" of any insured arising out of and in the course of:
>
> > (a) Employment by any insured; or
> >
> > (b) Performing duties related to the conduct of any insured's business . . . .
>
> . . . .
>
> This exclusion applies:
>
> (1) Whether any insured may be liable as an employer or in any other capacity . . . .
>
> . . . .
>
> **C.** For the purpose of this endorsement, the definition of "Employee" in the **Definitions** Section is **replaced** by the following:

"Employee" is any person or persons who provide services directly or indirectly to any insured, regardless of where the services are performed or where the "bodily injury" occurs, including, but not limited to a "leased worker", a "temporary worker", a "volunteer worker", a statutory employee, a casual worker, a seasonal worker, a contractor, a subcontractor, an independent contractor, and any other person or persons hired by, loaned to, or contracted by any insured or any insured's contractor, subcontractor, or independent contractor. . . .

Sindorf's personal injury complaint against Chatari and Complete Concrete alleged the following facts:

> Defendant Chatari . . . provided a place to stay and a job to . . . Allen, a violent and unstable individual with a history of assaultive behavior and criminal conduct.
>
> . . . .
>
> On July 7, 2009, . . . Allen was working as an employee for . . . Chatari and/or Complete Concrete, LLC, and was agitated by the presence of the Plaintiff. Allen told . . . Chatari he could not work in the presence of Plaintiff. On information and belief, Plaintiff was unaware of the looming threat to his personal safety.
>
> Defendant Chatari, on information and belief, merely gave . . . Allen two [V]alium tablets to calm him down. Allen thereafter left the job site. At no time did Defendant Chatari take any additional steps to warn or protect the Plaintiff.
>
> Defendant Allen returned to the job site some time later and parked his truck. On information and belief, Mr. Allen parked his truck about a half mile from the work site and got into a red car driven by . . . Riss, who drove Mr. Allen to the work site.
>
> Defendant Riss proceeded to drive Mr. Allen to the job site and backed his vehicle up to the site. Then, Mr. Allen . . . walked unimpeded to where Plaintiff was running the hose

with his back to Mr. Allen. On information and belief, other employees of Defendant Chatari, and/or Defendant Complete Concrete, LLC, saw Mr. Allen sneak up on the Plaintiff Sindorf and negligently failed to stop Mr. Allen and/or warn Plaintiff Sindorf and/or were unaware of the need to do anything because of the failure of Mr. Chatari to take steps to warn employees or protect the Plaintiff.

Mr. Allen then punched Plaintiff Sindorf, who was focused on distributing concrete from the pumper truck into the concrete forms, from behind in the head. Plaintiff Sindorf was staggering and stunned, but still was on his feet holding the hose. . . . Mr. Allen walked back unimpeded by any other employee of Defendant Chatari and/or Complete Concrete, LLC, and hit Plaintiff Sindorf again, knocking Plaintiff down onto a concrete stake and into the wet concrete.

Mr. Allen then ran back to the running car and sped away.

. . . .

Defendants Chatari and/or Complete Concrete, LLC, are liable for negligent supervision, negligent hire, negligent security, negligent failure to warn Plaintiff and others of the threat, and also vicariously liable for the actions of Allen and/or other employees and/or John Does 1-5.

Defendants are liable for reckless indifference to the safety of others.

In its order on summary judgment, the superior court correctly concluded that to establish the employer's liability exclusion Great Divide had to show *both* that there were no genuine issues of material fact that Sindorf was an employee of Complete Concrete *and* that his injury arose out of and in the course of his employment, not simply that Sindorf was an employee under the policy. The court also astutely observed in its order denying Sindorf's reconsideration motion that Sindorf "find[s] [himself] in a catch-22 where [he] must simultaneously show that Great Divide's policy — which covers Chatari only 'with respect to the conduct of [his] business' — covers the incident

and is not subject to Exclusion e, which requires that the injuries do not arise out of employment." Sindorf contends that the superior court's conclusion "is contradictory." We disagree.

In the superior court, the parties agreed that the phrase "arising out of and in the course of" employment or performance of duties in the insurance contract should be construed as having the same meaning that it does in workers' compensation law, and the court applied workers' compensation cases in its analysis. As explained above, for purposes of this case, we agree that the phrase has the same general meaning in both contexts. "The intent of the employment exclusion [in a commercial general liability policy] appears to be to avoid duplication of coverage provided under Workers' Compensation and Employers Liability policies."[29] As a result, we give the phrase "arising out of and in the course of employment" the same meaning in the general liability insurance contract that it has in workers' compensation law.[30]

### 2. The attack arose out of and in the course of employment because Chatari "engendered, exacerbated, or facilitated" Sindorf's injury.

Sindorf contends on appeal that Allen's attack on him did not arise out of and in the course of his work for Chatari because the attack was based on "personal animus" that was not related to Sindorf's performance of his duties at the concrete pour the day of the attack. He argues that the superior court improperly made factual inferences that favored Great Divide in reaching its decision and erred in concluding that any negligence on the part of Chatari brought the personal injury within the employee

---

[29] 21 HOLMES, *supra* note 14, § 132.5 [C][1], at 66-67.

[30] *See Ottumwa Hous. Auth. v. State Farm Fire & Cas. Co.*, 495 N.W.2d 723, 727 (Iowa 1993) (holding that "arising out of and in the course of employment" had the same meaning in insurance contract that it had in workers' compensation law).

exclusion. He maintains that proper application of *Temple v. Denali Princess Lodge*[31] shows that his injury did not arise out of and in the course of employment. He also argues that *Estate of Milos v. Quality Asphalt Paving, Inc.*[32] shows the fact-sensitive nature of determining whether an injury arose out of and in the course of employment, rendering summary judgment inappropriate in his case.

But the superior court evaluated the case using principles we discussed in *Temple* and decided that Allen's warning to Chatari "that he was agitated by Sindorf's presence at the site" supplied "a causal link between the fact of Sindorf's employment and the assault." The court reasoned that Sindorf's case was more closely akin to *Murphy v. Workers' Compensation Appeals Board*,[33] a California case we discussed in *Temple*, than it was to *Temple* itself. The superior court characterized the facts as alleged in Sindorf's complaint as follows: "Chatari knowingly brought Allen in close proximity to Sindorf in order to complete the job that day, possessed foreknowledge of the looming danger to Sindorf's safety, and opted not to warn Sindorf." The court interpreted the complaint as alleging that "Chatari possessed foreknowledge of a unique risk of danger, [but] failed to warn [Sindorf]," which made the case similar to *Murphy*.[34]

As we stated in *Temple*, a personally motivated assault that occurs on the job is not generally compensable because it does not arise out of and in the course of

---

[31]     21 P.3d 813 (Alaska 2001).

[32]     145 P.3d 533 (Alaska 2006).

[33]     150 Cal. Rptr. 561 (Cal. App. 1978).

[34]     Because the court accepted as true and undisputed Sindorf's allegations in his complaint for purposes of ruling on the motion for summary judgment, there were no genuine issues of material fact precluding the court's interpretation.

employment.[35]  But an assault may be found to have arisen out of and in the course of employment if the employer "contributed to the episode by engendering, exacerbating, or facilitating the assault."[36]  The question here is thus whether as a matter of law the facts as alleged in Sindorf's underlying complaint show that Chatari's actions engendered, exacerbated, or facilitated the assault.  We hold that they do.

As a factual basis for his causes of action, Sindorf alleged the following: (1) Chatari had provided a place to stay and a job to Allen, a "violent and unstable individual with a history of assaultive behavior and criminal conduct"; (2) Chatari gave Allen two Valium tablets in an attempt to calm him down after Allen "was agitated by the presence of [Sindorf]" and told Chatari "he could not work in the presence of [Sindorf]"; (3) Chatari failed to warn Sindorf of Allen's statements; (4) Chatari failed to "take any additional steps to warn or protect" Sindorf, such as informing other employees of Allen's statement; and (5) Chatari (through his other employees) negligently failed to stop Allen when he came to attack Sindorf.  Based on these factual allegations, Sindorf claimed that Chatari was "liable for negligent supervision, negligent hire, negligent security, negligent failure to warn [Sindorf] and others of the threat, and also vicariously liable for the actions of Allen and/or other employees . . . ."  Sindorf did not otherwise specifically delineate the duties Chatari owed him, the manner in which Chatari breached those duties, or the way any breach caused his injuries.  It is difficult to imagine how Sindorf's injuries could not have arisen out of and in the course of his employment by Chatari given that Sindorf himself concludes that Chatari breached his duties to Sindorf to properly (that is, non-negligently) hire and supervise Allen, secure

---

[35]    21 P.3d at 817-18 (citation omitted).

[36]    *Id.* at 817 (citing *Marsh v. Alaska Workmen's Comp. Bd.*, 584 P.2d 1135, 1136 (Alaska 1978)).

the jobsite, and warn Sindorf and Chatari's other employees about the danger Allen presented. And if Allen's attack on Sindorf were a personally motivated assault not arising out of and in the course of employment, as Sindorf argues, how could Chatari be held liable under a theory of respondeat superior for Allen's assault? As the superior court aptly commented, Sindorf finds himself in a Catch-22.

A negligence action requires proof of proximate cause as well as other elements.[37] The only way Chatari's alleged negligence in hiring or supervising Allen or failing to warn Sindorf of a possible assault by Allen could be a legal cause of Sindorf's injuries was if (1) Chatari had foreknowledge of Allen's propensity for violence and his animosity toward Sindorf or (2) Chatari knew that Allen was reasonably likely to assault Sindorf at the concrete-pouring job that day.

Yet Chatari's foreknowledge and failure to warn anyone, and his lack of action to prevent the assault, are the types of employer behavior that other courts have relied on to conclude that a personally motivated assault in the workplace arose out of and in the course of employment, bringing an otherwise noncompensable injury within the coverage of workers' compensation. For example, the South Carolina Supreme Court determined that an injury arose out of and in the course of employment when "the employee was required to perform his duties under circumstances where he was endangered by a peril from a source outside of and unrelated to his actual work, *which peril was known to the employer and against which the employer afforded no protection or relief*."[38] And in *Murphy*, a domestic assault was found to have arisen in the course of employment when an employee's husband told the employer in advance of his plan

---

[37] *Lindsey v. E & E Auto. & Tire Serv., Inc.*, 241 P.3d 880, 885 (Alaska 2010) (citing *Wickwire v. Arctic Circle Air Servs.*, 722 P.2d 930, 932 (Alaska 1986)).

[38] *Carter v. Penney Tire & Recapping Co.*, 200 S.E.2d 64, 67 (S.C. 1973) (emphasis added).

to assault his wife at work, but the employer took no action to prevent an attack.[39] The California court relied on the employer's knowledge that "an attack was imminent" and its failure to warn the employee of her husband's "specific intent" in analyzing the case.[40] Finally, a New York appellate court held that an employee's murder arose out of and in the course of employment when the employer made the employee deliver goods to an individual who, the employer knew, had a "personal grievance" against the employee.[41]

Here there is no coverage under the commercial general liability insurance policy because, taking as true the facts alleged in Sindorf's complaint, Chatari knew of the peril to Sindorf and either negligently exposed him to it or failed to take action to protect him from harm. These allegations, presumed to be true, establish that Chatari, as Sindorf's employer under the policy, engendered, exacerbated, or facilitated Allen's attack on Sindorf as a matter of law. The resulting injury thus arose out of and in the course of Sindorf's employment by Chatari and is subject to the policy's employee exclusion.

We are unpersuaded by Sindorf's argument that finding no coverage here will create a gap in coverage, where injuries may not be covered by either workers' compensation or commercial general liability policies. As we have explained, the "gap," if there is one, was created by Chatari's failure to procure workers' compensation insurance; employees need not fear that our opinion will create gaps where employers actually purchase both general liability insurance and workers' compensation/employers' liability insurance because today's opinion does not pertain to those kinds of circumstances.

---

[39] 150 Cal. Rptr. 561, 563-65 (Cal. App. 1978).

[40] *Id.* at 564-65.

[41] *Berresi v. Ryan*, 275 N.Y.S. 370, 371-72 (N.Y. App. Div. 1934).

## V.    CONCLUSION

We AFFIRM the decision of the superior court.