# IN THE COURT OF APPEALS OF IOWA

No. 17-0099
Filed September 13, 2017

**JOSE CRUZ DELGADO-ZUNIGA,**
    Plaintiff-Appellant,

**vs.**

**DICKEY & CAMPBELL LAW FIRM, P.L.C. and MICHAEL JON PIPER,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

Jose Cruz Delgado-Zuniga appeals from the district court's order granting summary judgment in favor of attorney Michael Piper and his employer, Dickey & Campbell Law Firm, P.L.C. **AFFIRMED.**

Gregory T. Racette and Chandler M. Surrency of Hopkins & Huebner, P.C., Des Moines, for appellant.

Thomas J. Joensen, Matthew R. Phillips, and Catherine M. Lucas of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees.

Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Jose Cruz Delgado-Zuniga appeals from the district court's order granting summary judgment in favor of attorney Michael Piper and his employer, Dickey & Campbell Law Firm, P.L.C., (collectively Defendants). He argues genuine issues of material fact exist such that summary judgment was improper. We affirm.

### I. Background Facts and Proceedings.

In March 2008, Jose Cruz Delgado-Zuniga (Delgado) filed a complaint of employment discrimination against his employer, Natural Milk Production, under Iowa Code chapter 216 (2007), with the Iowa Civil Rights Commission (ICRC). Utilizing the ICRC's fillable form, Delgado indicated he was discriminated against because of his Mexican national origin, because of his gender, and for retaliation "[b]ecause [he] filed a prior civil rights complaint, opposed a discriminatory practice, or participated as a witness in an anti-discrimination proceeding." Delgado checked the boxes on the form claiming his employer took the following actions against him: "Denied Accommodation/Modification," "Disciplined/Suspended," "Laid-off/Failure to Recall," "Harassment," "Treated Differently," "Undesirable Assignment/Transfer," and "Unequal Pay." Delgado then gave a summary of his allegations, essentially asserting he worked in horrifying conditions, which led to him becoming ill and having to miss work, and when he complained to his employer about the conditions and his resulting illness, he was harassed and given poor work assignments, among other things, and he was ultimately fired. Delgado subsequently received a "right to sue" letter from the ICRC.

In November 2008, Delgado entered into a fee agreement with attorney Michael Piper of the Dickey & Campbell Law Firm, P.L.C. The agreement stated Delgado was employing Piper

> to represent him in connection with (1) [Delgado's] discrimination complaint . . . ; (2) [Delgado's] workers' compensation claim for injuries arising out of and occurring in the course of [Delgado's employment]; (3) [Delgado's] claim for damages arising from [Delgado's] wrongful termination from [his employment]; and (4) investigation of immigration possibilities for [Delgado].

In 2009, Delgado, through Piper, filed a federal complaint asserting claims of employment discrimination and retaliation against Delgado's employer. Then, in March 2010, Delgado, through Piper, filed a workers' compensation claim against his employer. Delgado stated on the claim form that he was injured on March 25, 2008, after his employer prohibited him "from using the bathroom during extended periods at work," causing him to suffer gastrointestinal damage. At the end of 2010, Delgado and his employer entered into a settlement agreement concerning his federal lawsuit. The parties acknowledged in the agreement that it excluded Delgado's "active workers compensation claim."

Thereafter, in the workers' compensation case, Delgado's employer filed a motion for summary judgment, asserting Delgado's injury was beyond the statute of limitations. Piper planned to file a resistance to the motion based upon the discovery rule, but Piper missed the deadline. The deputy workers' compensation commissioner subsequently granted Delgado's employer's summary judgment motion.

In 2015, Delgado sued Defendants for professional malpractice based upon Piper's failure to timely respond to the motion for summary judgment before

the Iowa Workers' Compensation Commissioner. Defendants subsequently filed a motion for summary judgment, arguing Delgado's workers' compensation claim was futile from the start because the commissioner lacked subject matter jurisdiction over the dispute, and therefore, Defendants could not be liable for the alleged malpractice. Defendants also argued Delgado's failure "to procure expert testimony regarding the standard of care for lawyers and on causation" was fatal to his malpractice claim. Following a hearing, the district court granted Defendants' summary judgment motion for both reasons advanced by Defendants.

Delgado now appeals.

## II. Scope and Standards of Review.

We review a summary judgment ruling interpreting an insurance policy for correction of errors at law. *See Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 235 (Iowa 2015). A grant of summary judgment is only proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Iowa R. Civ. P. 1.981(3); *Villarreal v. United Fire & Cas. Co.*, 873 N.W.2d 714, 719 (Iowa 2016). If the dispute concerns only the legal consequences of undisputed facts, summary judgment is appropriate. *See Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015). But, if the dispute involves facts that might affect the outcome of the suit, given the applicable governing law, an issue of "material" fact exists. *See id.* "We view the evidence in the light most favorable to the nonmoving party, who is entitled to every legitimate inference that we may draw from the record." *Id.* at 7.

### III. Discussion.

On appeal, Delgado argues the district court erred in granting summary judgment, asserting genuine issues of material fact exist to preclude summary judgment on both points found by the district court—lack of subject matter jurisdiction and lack of expert testimony. Because we agree with the district court that the agency lacked subject matter jurisdiction based upon the unique facts of this case and find this dispositive, we need not address the second basis for summary judgment.

Ultimately, this case comes down to the interpretation of two Iowa Supreme Court cases, *Ottumwa Housing Authority v. State Farm Fire & Casualty Co.* (OHA), 495 N.W.2d 723, 725 (Iowa 1993), and *Baird v. Ottumwa Community School District*, 551 N.W.2d 874, 875 (Iowa 1996). In *OHA*, an insured employer was issued an insurance policy by the insurer covering workers' compensation claims. *See* 495 N.W.2d at 726. After an employee asserted a workers' compensation claim against the insured employer and the insurer did not defend the insured employer in the suit, the insured employer sued its insurer for breach of contract. *See id.* The district court granted the insurer's motion for summary judgment, and the supreme court affirmed, finding there was no coverage under the insured employer's policies. *See id.* at 730. The court reasoned that whether the insurer had a duty to defend its insured employer hinged on "whether an issue of potential or possible liability [was] generated under the terms of the policies." *Id.* at 726. The court then considered whether, as the insured employer argued, there was coverage under the workers' compensation part of the policy even though a civil suit had been filed by the insured's employees

seeking damages that were "potentially recoverable as benefits under the workers' compensation law." *Id.* at 729. Because the insured's employees had a right of action against the insured employer for sex discrimination under state and federal law and did, in fact, file civil suits on that basis against the insured employer, the insured's employee's workers' compensation claim that was "based on the same acts of sex discrimination that she had alleged" in her civil suit was extinguished. *Id.* The court explained that, under Iowa's workers' compensation law, an "employer's immunity is the quid pro quo by which the employer gives up his normal defenses and assumes automatic liability, while the employee gives up his right to common law verdicts." *Id.* Because, "[i]n these circumstances the quid pro quo for [the insured employer] giving up its normal defenses [was] gone, . . . the basis for a workers' compensation claim grounded on these same discrimination claims [was] likewise gone." *Id.*; *see also Suckow v. NEOWA FS, Inc.*, 445 N.W.2d 776, 777 (Iowa 1989) (discussing the "quid pro quo" concerning workers' compensation claims and finding the district court lacked subject matter jurisdiction to hear an employee's claim concerning a workplace injury because the workers' compensation statutes provided the exclusive remedy for such claims "of an employee against an employer for work-related injuries"). Stated another way, the court concluded that "this quid pro quo is gone when a sex discrimination claim under state or federal statutes is available for the same acts alleged in the workers' compensation proceeding." *Baird*, 551 N.W.2d at 876 (discussing *OHA*, 495 N.W.2d at 729). Consequently, since the insured employer could not have been liable in its employee's workers' compensation case, the insured employer was not covered by its insurer's policy,

and the insurer therefore had no duty to defend it in the suit. *See OHA*, 495 N.W.2d at 729. As a result, the court concluded summary judgment was properly granted. *See id*.

A few years later, the supreme court considered *Baird*, wherein summary judgment had been granted by the agency in favor of an employer based upon the agency's interpretation of the court's ruling in *OHA*. *See Baird*, 551 N.W.2d at 875. In *Baird*, an employee filed a workers' compensation claim against her employer, "asserting emotional or psychological injury in the workplace as a result of the alleged 'abusive treatment by supervisors resulting in severe depression.'" *Id*. The employee also "pursued a claim with the [ICRC] . . . alleg[ing] sexually motivated harassment and retaliation." *Id*. Before the ICRC determined whether a right-to-sue letter would be issued to the employee, the employee and her employer entered into a compromise agreement wherein the employer denied the employee's allegations but agreed, among other things, to pay the employee for emotional distress damages. *See id*. The agreement also expressly provided "that it did not include any recovery for any claims . . . under the Iowa Workers' Compensation Act" and the employee "retain[ed] all rights to proceed under the Iowa Workers' Compensation Act." *Id*.

The employer in *Baird* sought summary judgment thereafter in the employee's workers' compensation case

> on the ground that the civil rights remedies, which [the employee] pursued, preclude[d] any claim under the Iowa workers' compensation laws based on the same conduct by the employer. The employer's motion for summary judgment asserted that (1) workers' compensation benefits are the quid pro quo for an employee's loss of an independent action at law; and (2) because an independent action is available on civil rights claims either

before an administrative agency or a court, there is no quid pro quo for workers' compensation liability for the acts on which the civil rights claims are based.

*Id.* Citing *OHA*, the agency agreed and granted the employer's motion for summary judgment, which was subsequently affirmed by the district court on judicial review. *See id.* at 876.

The supreme court reversed the grant of summary judgment, finding that, other than the fact that a civil rights claim had been made, nothing in the record supported the employer's contention that the employee's claimed injury of emotional distress in her workers' compensation case was specifically the result sexual harassment. *See id.* Rather, the employee's workers' compensation claim only "asserted that she had suffered emotional distress as the result of 'abusive treatment by supervisors resulting in severe depression.'" *Id.* Because "not all circumstances that would create a compensable [workers' compensation] claim for emotional distress benefits . . . give rise to a sexual discrimination claim," and because it "was never adjudicated by the [ICRC] or a court that the acts upon which the civil rights complaint was based in fact occurred or, if they did occur, whether this constituted sex discrimination in employment," the court concluded a "genuine issue of material fact exist[ed] concerning [the employee's] right to proceed with her workers' compensation claim." *Id.*

Delgado argues the factual circumstances of his case are akin to those present in *Baird*, contending that because there had not been an express determination that the acts upon which his workers' compensation claim were based stemmed from the same acts as his discrimination claim, a genuine issue

of material fact exists as to whether he could proceed with his claim. However, we agree with the district court that *Baird* is distinguishable:

> [W]hile the factors [Delgado] points to in his resistance are the same as the factors discussed by the court in *Baird*, there is a decisive factor present in this case that was not present in *Baird* and that is [Delgado's] own definition of his workers' compensation claim. The claims are identical—not being allowed to use the restroom because he is of Mexican origin, resulting in mental and physical injury. In contrast, in *Baird* the summary judgment record left open the question of whether the injuries for which the [employee] sought workers' compensation benefits were caused by conduct that would support a claim for discrimination or by some other, non-discriminatory, form of emotional abuse.

Unlike the factual circumstances in *Baird*, even considering the record in the light most favorable to Delgado, the record here shows the acts upon which his workers' compensation claim was based, as expressly described by Delgado on the workers' compensation claim form, stemmed from the same acts as his discrimination claim. Nevertheless, Delgado urges that we find a genuine issue of material fact exists because, since *OHA* and *Baird*, the agency "now holds that preemption only occurs when illegal discrimination has actually been established." However, we think that Delgado misinterprets the agency's stance. For instance, in *Sharp v. University of Northern Iowa*, the agency found "the claimant's alleged occurrences of discrimination [were] *likely* relate[d] to alleged incidents also underlying her claimed mental injury"; therefore, there was not a question of subject matter jurisdiction because the claimant's workers' compensation and civil discrimination claims overlapped. *Iowa Workers' Comp. Com'n File* No. 5027941, 2012 WL 2244287, at *10 (May 14, 2012) (emphasis added). Here, Delgado's claims do not merely overlap like two circles in a Venn diagram, they are the same—there is only one circle. Thus, because the acts

alleged in his workers' compensation claim were the same acts that formed the basis for his civil discrimination suit, the agency was without subject matter jurisdiction to hear his workers' compensation claim. *See OHA*, 495 N.W.2d at 729; *see also Suckow*, 445 N.W.2d at 777. Because the agency lacked subject matter jurisdiction to hear Delgado's claim, even assuming *arguendo* that Piper was negligent, Delgado's workers' compensation claim would have failed. As a result, Delgado sustained no damage by Piper's inaction, and his claim of legal malpractice fails as a matter of law.

### IV. Conclusion.

Because we agree with the district court that the agency lacked subject matter jurisdiction to hear Delgado's workers' compensation claim, Delgado's workers' compensation claim would have failed. As a result, even assuming *arguendo* that Piper was negligent, Delgado sustained no damage by Piper's inaction, and his claim of legal malpractice fails as a matter of law. Consequently, we find no error in the district court's grant of summary judgment in favor of Defendants.

**AFFIRMED.**