BRODY, Justice.
Plaintiffs Joel W. Harmon and Kathleen F. Harmon filed a claim with them insurance company, State Farm Mutual Automobile Insurance Co., after their motorhome was broken into and damaged. The Hannons subsequently brought suit against State Farm in district court, claiming that State Farm breached the insurance agreement by failing to pay the amount required to actually repair the vehicle or pay the cash value. The Harmons also brought a claim for bad faith. State Farm moved for summary judgment on both claims, which the district court granted. The Harmons timely appealed.
I. FACTUAL AND PROCEDURAL BACKGROUND
The Harmons owned a 2008 National Paci-fica motorhome. They lived in the motorhome in Alaska. The Hannons spent the fall of 2013 in the lower 48 states. In December 2013, they placed the motorhome in storage at a facility in Spokane, Washington, and planned to keep it there until spring.
On December 19, 2013, the motorhome was burglarized. The dashboard was severely damaged when the intruders removed electrical components. The Harmons immediately filed a claim with State Farm. State Farm acknowledged receipt of the claim on December 22, 2013, and assigned a Claim Associate to handle the claim. The insurance policy at issue provided comprehensive coverage for the motorhome subject to a $500 deductible.
Following the loss, the Harmons obtained a written repair estimate from the facility where the motorhome had been stored. The repair estimate which was dated January 21, 2014, contained two separate estimates. The *97 first estimate totaled over $184,000 and included $155,000 for the custom molding of a new dash because the old dash could not be repaired and a replacement could not be found. The second estimate was titled “Estimate with Figures Available.” This estimate totaled $18,491.36 and included $2,000 for replacement of the dash, even though a replacement unit could not be located.
In January 2014, the Harmons were in touch with a State Farm claim representative via telephone. Mr. Hannon stated in his affidavit in opposition to summary judgment that “[the claim representatiye] informed us that State Farm would be totaling the coach because the dash could not be repaired, that no existing replacement was available, and that the dash could only be re-manufactured for a cost of approximately $155,000.00.” State Farm did not dispute these statements.
Sometime in April or May 2014, Mr. Harmon spoke again with the State Farm claim representative via telephone. Mr. Harmon stated in his affidavit that the Claim Representative informed him at that time that State Farm did not consider the motorhome a total loss and that State Farm would pay the repair cost based on an estimate of the cost if a dash were actually available. On May 29, 2014, the claim representative sent Mr. Harmon a letter confirming their conversation and offering to pay $18,491.36 for the damage to the motorhome. The letter stated in part:
The issue has been to get a replacement dash, to be able to complete the repairs to your motorhome. After much research by RV Northwest, it appears there is not a replacement dash available, new or used. I have spoke [sic] with several RV repair facilities myself. If a dash was available I was told the price would be in the $2,000.00 range. I have taken the parts prices, labor prices, etc from the BV Northwest estimate and added $2,000.00 for a dash. These figures total up to, [sic] $18,491.36.1 can write you a check for this amount. If there is any additional parts needed, additional labor, or parts increases, we will review them and handle it as a supplement.
Your motorhome is not a total loss because of an obsolete part, or because a company goes out of business and parts are no longer.available. I am obligated to pay for what the part would cost if it was available. In this case the estimate for a replacement dash was $2,000.00.
If you have any additional information, or any questions, please give mé a call. I am willing to look at any prospects with the idea of getting your motorhome back to the way it was prior to this incident. Thanks for your cooperation.
(Emphasis added).
Approximately three weeks after receiving this letter, the Harmons filed suit against State Farm alleging breach of contract and bad faith. On July 21, 2014, State Farm filed an answer and moved to stay the proceedings and compel an appraisal process that is required when there is a disagreement between the parties as to the cost of the repair or the actual cash value. It is undisputed that State Farm again offered to pay the Harmons what it estimated to be the actual cash value of the motorhome while the motion to stay proceedings was pending. The Harmons rejected the offer. On August 22, 2014, the parties stipulated to entry of the stay and to participate in the appraisal process. Thereafter, the parties traded letters concerning what would be determined by the appraisers. The Harmons demanded that the appraisers determine the actual cash value of the vehicle. State Farm, on the other hand, demanded the appraisal of both the cost of repair and the actual cash value.
On October 27, 2014, the claim representa-tiye sent the Harmons a letter advising them of new repair options. A used replacement dash from the previous model year had been located. The used dash would fit the space in the Harmon’s motorhome, but was not an exact match. State Farm also advised the Harmons that another repair specialist had determined that their existing dash could be repaired. The claim representative enclosed two estimates, one for replacing the dash for $18,994.22 and the other for repairing the dash for $18,252.89, both of which would be subject to the $500 deductible. State Farm requested that the Harmons choose between *98 either replacing the damaged dash or repairing it. The Harmons advised State Farm a few days later that they wanted to discuss the feasibility of repairs with their expert.
On November 10, 2014, the Harmons advised State Farm that they chose to have the dash repaired. On November 21, 2014, State Farm paid the Harmons $17,752.89—the amount of the repair estimate less the $500 deductible. On January 80, 2015, the umpire involved in the appraisal process, issued a decision finding that the cost of repair was $18,252.89—the amount State Farm had tendered previously less the $500 deductible.
After State Farm tendered payment, the parties again traded letters regarding the repairs. In February 2015, the Harmons advised State Farm that they would have the repairs made subject to their right to reject if the repairs were not satisfactory. The Har-mons also asked for a determination of the actual cash value of the vehicle from the umpire so that it could be used in the event the repairs were not successful. In May 2015, State Farm filed a motion to lift the stay of proceedings, arguing that the cash value of the motorhome was moot and, alternatively, that the Harmons refused to complete the appraisal process. The Harmons stipulated to lift the stay. The litigation then proceeded.
State Farm filed a motion for a summary judgment in June 2015. The Harmons responded to the motion. In August of 2015, the district court granted State Farm’s motion for summary judgment, finding no breach of contract or bad faith. The district court dismissed the Harmons’ claims and final judgment was entered. In September 2015, the Harmons timely filed a Motion to Alter or Amend the Judgment pursuant to Idaho Rule of Civil Procedure 59. The Order Denying Plaintiffs Motion to Alter or Amend the Judgment was filed in October 2015. The Harmons timely filed them Notice of Appeal in November 2015.
II.ISSUES PRESENTED ON APPEAL
1.Whether the district court erred when it determined that State Farm had not breached the insurance contract.
2. Whether the district court erred when it dismissed the Harmons’ bad faith claim.
3. Whether the Harmons are entitled to an award of reasonable attorney’s fees and costs on appeal.
III.STANDARD OF REVIEW
Idaho appellate standards of review apply even when a contract’s choice of law provision requires the application of the law of another state. See Carroll v. MBNA Am. Bank, 148 Idaho 261, 264, 220 P.3d 1080, 1083 (2009) (applying the Idaho standard of review when a Delaware choice of law was at issue). In reviewing a grant of summary judgment, this Court’s standard of review is the same as the district court’s standard in ruling upon a motion. Thomson v. Lewiston, 137 Idaho 473, 475-76, 50 P.3d 488, 490-91 (2002). “The [district] court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” I.R.C.P. 56(a). Courts will consider “pleadings, depositions, and admissions on file, together with the affidavits, if any.” Kiebert v. Goss, 144 Idaho 225, 227, 159 P.3d 862, 864 (2007) (internal citations omitted). In making that determination, all facts are construed in the light most favorable to the non-moving party and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. Parks v. Safeco Ins. Co. of Illinois, 160 Idaho 556, 561, 376 P.3d 760, 765 (2016). If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review. Kiebert, 144 Idaho at 227, 159 P.3d at 864.
IV.ANALYSIS
A. Alaska law governs the parties’ dispute.
State Farm insured the motorhome under Alaska Policy Form 9802A There is a choice of law provision in the policy which states: “Without regard to choice of law rules, the law of the state of: Alaska will control ... in the event of any disagreement as to the *99 interpretation and application of any provision in this policy.” This Court has previously ruled that the law of the state chosen by the parties to govern their contractual rights and duties will be applied. See Ward v. Puregro Co., 128 Idaho 366, 369, 913 P.2d 582, 585 (1996) (quoting Restatement (Second) of Conflict of Laws § 187). The parties do not contest the application of Alaska law.
It should be noted that, ordinarily, the reasonable expectations doctrine would not be applicable to this case, except for the parties’ choice of law provision. It is not the law in Idaho. This Court has held:
In declining to adopt the doctrine of reasonable expectations in Idaho, we follow the rationale of the dissenting opinion in Corgatelli[ v. Globe Life & Acc. Ins. Co., 96 Idaho 616, 533 P.2d 737 (1975)]. There, Justice Donaldson rejected an adoption of the doctrine of reasonable expectations and relied upon the traditional basic principles involved in construing contracts. Intent is to be determined from the language of the contract itself] ] and in the absence of ambiguity, contracts for insurance must be construed as any other and understood in their plain, ordinary and proper sense, according to the meaning derived from the plain wording of the contract.
Casey v. Highlands Ins. Co., 100 Idaho 505, 509, 600 P.2d 1387, 1391 (1979) (footnote omitted).
B. The district court erred when it determined that State Farm did not breach the insurance agreement.
The district court found that State Farm did not breach the insurance agreement. The district court held that the policy required State Farm to pay the amount as determined by a bid or repair estimate that the company approves. The district court reasoned that State Farm approved the RVs Northwest estimate dated January 21, 2014, in the amount of $18,491.36 and offered to pay this amount to the Harmons. The district court erred in its analysis of the policy.
In Alaska, the interpretation of an insurance contract is a question of law that is reviewed de novo. Devine v. Great Divide Ins. Co., 350 P.3d 782, 786 (Alaska 2015). “Thus, ‘the liability of an insurer and the extent of the loss under a policy of liability or indemnity insurance must be determined, measured, and limited by the terms of the contract.’ ” Guin v. Ha, 591 P.2d 1281, 1285 (Alaska 1979) (quoting 15 G. Couch, Cyclopedia of Insurance Law § 56:1 (2d ed. 1966)). “The purpose of contract interpretation is to ascertain and effectuate the reasonable expectations of the parties.” Stordahl v. Gov’t Emp. Ins. Co., 564 P.2d 68, 65 (Alaska 1977). The Alaska Supreme Court has explained:
Interpretation of an insurance contract is a question of law that we review de novo, looking “to the language of the disputed policy provision, other provisions of the policy, and relevant extrinsic evidence.” “[B]ecause of inequities in bargaining power, we construe coverage broadly and exclusions narrowly, in favor of insureds.” Insurance contracts are construed using the reasonable expectations doctrine, under which the “objectively reasonable expectations” of an insurance applicant about the terms of the insurance contract will be honored “even though painstaking study of the policy provisions would have negated those expectations.” “To determine the parties’ reasonable expectations, we examine (1) the language of the disputed policy provisions; (2) the language of other provisions in the same policy; (3) extrinsic evidence; and (4) ease law interpreting similar provisions.”
Devine, 350 P.3d at 786 (footnotes omitted and emphasis added).
It is important to begin the analysis of State Farm’s obligations with the language of the insuring agreement in the comprehensive coverage portion of the policy. The policy stated: “We will pay for loss, except loss caused by collision, to a covered vehicle.” The policy defined the term “loss” as:
1. direct, sudden, and accidental damage to; or
2. total or partial theft of a covered vehicle. Loss does not include any reduction in the value of any covered vehicle after it has been repaired, as compared to its value before it was damaged.
*100 The policy had a “loss settlement” provision which stated:
1, We have the right to choose to settle with you or the owner of the covered vehicle in one of the following ways:
a. Pay the cost to repair the covered vehicle minus any applicable deductible.
(1) We have the right to choose to settle with you or the owner of the covered vehicle in one of the following ways:
(a) The cost agreed to by both the owner of the covered vehicle and «s;
(b) A bid or repair estimate approved by us; or
(c) A repair estimate that is written based upon or adjusted to:
(i) the prevailing competitive price;
(ii) the paintless dent repair price that is competitive in the market; or
(iii) a combination of (i) and (ii) above.
The prevailing competitive price means prices charged by a majority of the repair market in the area where the covered vehicle is to be repaired as determined by a survey made by ms. If asked, we will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the covered vehicle to its pre-loss condition.
[[Image here]]
b. Pay the actual cash value of the covered vehicle minus any applicable deduction.
[[Image here]]
The Harmons sustained a loss to their motorhome in the form of a partial theft. The issue to be determined is how to measure that loss. State Farm takes the position that the policy gave the insurer the sole discretion to determine how to pay the claim. State Farm argues that it had the choice to either: (a) pay the cost to repair the motorhome minus the deductible; or (b) pay the actual cash value of the motorhome. The company argues that since it has now paid the cost to repair the motorhome there was no breach of contract. State Farm’s argument is unavailing.
It is undisputed that a State Farm claim representative initially told the Harmons that the company would pay the actual cash value for the motorhome because the dash could not be repaired or replaced. Later the Har-mons received a phone call from the same adjuster reversing course. Instead of paying the actual cash value of the vehicle, State Faim would pay the Harmons the cost to repair the vehicle even though the parties agreed that it could not be repaired and a replacement dash did not exist. On May 29, 2014, more than five months after the loss, State Farm sent the Harmons a written settlement offer confirming their conversation and stating:
The issue has been to get a replacement dash, to be able to complete the repairs to your motorhome. After much research by RV Northwest, it appears there is not a replacement dash available, new or used. I have spoke [sic] with several RV repair facilities myself. If a dash was available I was told the price would be in the $2,000.00 range. I have taken the parts prices, labor prices, etc from the RV Northwest estimate and added $2,000.00 for a dash. These figures total up to, [sic] $18,491.36.1 can write you a check for this amount. If there is any additional parts needed, additional labor, or parts increases, we will review them and handle it as a supplement.
The letter continues; ‘Tour motorhome is not a total loss because of an obsolete part, or because a company goes out of business and parts are no longer available. I am obligated to pay for what the part would cost if it was available. In this case the estimate for a replacement dash was $2,000.00.” (Emphasis added).
The insurance agreement gave State Farm the option to “[p]ay the cost to repair the covered vehicle minus any applicable deductible” or to “[p]ay the actual cash value of the covered vehicle minus any applicable deduction.” “The words ‘repair’ and ‘replace’ mean restoration to a condition substantially the same as that existing before the damage *101 was sustained.” Great Texas Cnty. Mut. Ins. Co. v. Lewis, 979 S.W.2d 72, 74 (Tex. App. 1998), accord Repair, Dictionary.com, http:// www.dictionaiy.com/browse/repair (last visited Feb. 21, 2017) (stating the word “repair” means “to restore to a good or sound condition after decay or damage; mend: to repair a motor”). The cost of making a hypothetical repair is not the cost of restoring the moto-rhome to substantially the same condition as before the damage was sustained. There is nothing in the policy stating that if a necessary part is no longer available, then State Farm only needs to pay the amount that a repair would cost had the necessary replacement part existed. By making that assertion, State Farm misrepresented the terms of the policy to its insured in order to lessen the amount that it would pay for the loss.
The district court found that the only option the Harmons had after receiving the May 29, 2014 settlement offer was to initiate an appraisal process set forth in the policy. The appraisal provision states in relevant part: “If the owner of the covered vehicle or you fail to agree with us on the cost to repair the covered vehicle or the actual cash value of the covered vehicle, it shall be decided by an appraisal upon written demand by the owner of the covered vehicle, you, or us.” We disagree with the district court’s interpretation of the appraisal process requirement. The Harmons filed suit approximately three weeks after receiving State Farm’s May 29, 2014 settlement offer. At that point in time the parties had a dispute over State Farm’s interpretation of the policy, not the cost of the repair. This means that the appraisal process was not actually required, and the Harmons’ decision to file suit was not unreasonable.
The case continued and proceeded through the appraisal process. During the process, the parties discovered that the dash could be repaired. State Farm paid $18,252.90 to the Harmons before the appraisal umpire issued his decision. The umpire decided that the cost to repair all damages was in fact $18,252.90, less the $500 deductible. At this point, State Farm has satisfied its contractual monetary obligation to the Harmons by paying for the cost of repair. The dissent argues that this late payment is a mere delay in the loss settlement negotiations, and it releases State Farm from the original breach. We do not agree.
While State Farm has satisfied its obligation to pay for the loss to the motorhome, a breach of contract still occurred and may be the basis of a claim for bad faith. State Farm’s eventual payment of the contractual obligation cannot erase the original breach which prompted the filing of this lawsuit. The district court erred when it held that State Farm did not breach the insurance agreement. We hold that State Farm breached the agreement when it failed to pay the actual cash value of the motorhome on May 29, 2014.
C. The district court erred when it dismissed the Harmons’ bad faith claim based on its erroneous conclusion that State Farm had not breached the insurance agreement.
The district court dismissed the Harmon’s bad faith claim on summary judgment based upon the erroneous legal conclusion that State Farm had not breached the insurance agreement. However, as stated above, this Court finds that State Farm did, in fact, breach the insurance agreement. Therefore, the bad faith claim must be substantively reviewed.
Alaska has adopted the independent tort of bad faith in first-party cases and has used the accompanying objective standard from the well-known Anderson case:
The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances.
Hillman v. Nationwide Mut. Fire Ins. Co., 855 P.2d 1321, 1323-24 (Alaska 1993) (quoting Anderson v. Cont’l Ins. Co., 85 Wis.2d 675, 271 N.W.2d 368, 376-77 (1978)). To prove bad faith in Alaska, a plaintiff must establish “the absence of a reasonable basis for denying benefits of the policy and the *102 defendant’s knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.” Hillman, 855 P.2d at 1324 (quoting Anderson, 271 N.W.2d at 376-77). But “an insurance company may still challenge claims which are fairly debatable.” Hillman, 855 P.2d at 1324 (quoting Noble v. Nat’l Am. Life Ins. Co., 128 Ariz. 188, 624 P.2d 866, 868 (1981)). The Alaska Supreme Court has looked to and quoted Idaho bad faith law, including the seminal case of White v. Unigard Mutual Ins. Co., 112 Idaho 94, 730 P.2d 1014 (1986). See State Farm Fire & Cas. Co. v. Nicholson, 777 P.2d 1152, 1156 (Alaska 1989) (citing Unigard, 112 Idaho at 97-98, 730 P.2d at 1017-18).
In order for a first-party insured to recover on a bad faith claim, the insured must show: “1) the insurer intentionally and unreasonably denied or withheld payment; 2) the claim was not fairly debatable; 3) the denial or failure to pay was not the result of a good faith mistake; and 4) the resulting harm is not fully compensable by contract damages.” Parks v. Safeco Ins. Co. of Illinois, 160 Idaho 556, 562, 376 P.3d 760, 766 (2016) (quoting Robinson v. State Farm Mut. Auto. Ins. Co., 137 Idaho 173, 176, 45 P.3d 829, 832 (2002)). “Although the tort of bad faith is not a breach of contract claim, to find that the insurer committed bad faith there must also have been a duty under the contract that was breached.” Id.
“In Unigard, this Court held that a party claiming extra-contractual damages for insurance bad faith must either prove that the insurer has ‘intentionally and unreasonably' denied or delayed payment, provided the other elements are met.” Weinstein v. Prudential Prop. and Cas. Ins. Co., 149 Idaho 299, 348, 233 P.3d 1221, 1270 (2010) (citing Unigard, 112 Idaho at 100, 730 P.2d at 1020). “[T]his Court extended liability for insurance bad-faith to negligent delays or denials of insurance.” Id. (citing Reynolds v. Am. Hardware Mut. Ins. Co., 115 Idaho 362, 365, 766 P.2d 1243, 1246 (1988)).
In the present case, we hold that a duty under the contract was breached when State Farm refused to pay the actual cash value of the motorhome on May 29, 2014. Payment does not cure the breach and does not erase bad faith at the time of the breach. The question before the district court is whether State Farm acted in bad faith and whether the Harmons suffered any extra-contractual damages. The dissent contends that the Harmons’ claim is nothing but an attempt to squeeze money out of State Farm. The Harmons’ bad faith claim was dismissed on summai'y judgment without any analysis of whether the Harmons sustained any extra-contractual damages. The district court or a jury will have to resolve whether the Harmons are entitled to any additional compensation.
Turning to the final issue, a party will only be awarded attorney’s fees if it prevails on the claim. Tobeluk v. Lind, 589 P.2d 873, 877-78 (Alaska 1979); see also Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc., 141 Idaho 716, 718-19, 117 P.3d 130, 132-33 (2005). At this time, the case is remanded for further proceedings on the bad faith claim. It is not appropriate to decide attorney’s fees prematurely. See Estate of Holland v. Metro. Prop. and Cas. Ins. Co., 153 Idaho 94, 101, 279 P.3d 80, 87 (2012) (explaining that the district court must make preliminary determinations on the merits before determining attorney’s fees). Attorney’s fees shall be determined by the district court upon remand.
V. CONCLUSION
We reverse the decision of the district court and remand this case for further proceedings with regard to the bad faith claim, as well as attorney’s fees. Costs to Appellant.
Chief Justice BURDICK, and Justices EISMANN and HORTON concur.