# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46430

| | | |
|---|---|---|
| ABK, LLC, a limited liability company, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, September 2019 Term |
| | ) | |
| v. | ) | Opinion Filed: December 23,2019 |
| | ) | |
| MID-CENTURY INSURANCE COMPANY, | ) | Karel A. Lehrman, Clerk |
| a foreign insurer, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Cynthia K. C. Meyer, District Judge.

The district court's grant of summary judgment in favor of Mid-Century on ABK's breach of contract and bad faith claims is <u>affirmed</u>. Costs on appeal are <u>awarded</u> to Mid-Century as the prevailing party.

Phillabaum, Ledlin, Matthews & Sheldon PLLC, Spokane, Washington, attorneys for Appellant. Douglas R. Dick argued.

Elam & Burke, P.A., Boise, attorneys for Respondent. Jaclyn T. Gans argued.

_____

BEVAN, Justice

## I. NATURE OF THE CASE

ABK, LLC, owns and operates a gas station in Post Falls, Idaho where underground storage tanks were damaged due to water infiltration into the gas stored in the tanks. After the damage occurred, ABK submitted a claim to its insurer, Mid-Century Insurance Company ("Mid-Century"). Mid-Century denied the claim. ABK then sued Mid-Century alleging breach of contract and bad faith. Mid-Century moved for summary judgment on both claims. The district court granted summary judgment for Mid-Century on ABK's breach of contract claim finding ABK failed to raise a genuine dispute as to the fact the underground storage tanks were damaged by water, an excluded peril. The district court also granted summary judgment for Mid-Century

1

on ABK's bad faith claim finding ABK failed to establish coverage. ABK appeals the district court's grant of summary judgment in favor of Mid-Century on both claims. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

ABK owns and operates a gas and convenience store doing business as Jones Chevron and Deli in Post Falls, Idaho. When the described events occurred, ABK was insured by Mid-Century under a Business Owners Special Property Coverage Form ("the Policy"). The all-risk policy covered any physical loss or damage, other than losses or damages specifically excluded such as water damage, or damages caused by negligent maintenance, wear and tear, or weather conditions. Specifically, the Policy provides:

> **B. Exclusions**
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> . . .
>
> > **g. Water**
> > > (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
> >
> > . . .
> >
> > > (4) Water under the ground surface pressing on, or flowing or seeping through:
> > > > (a) Foundations, walls, floors or paved surfaces;
> > > > (b) Basements, whether paved or not; or
> > > > (c) Doors, windows or other openings.
>
> . . .
>
> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>
> . . .
>
> > **k. Other Types of Loss**
> > > (1) Wear and tear;
>
> . . .
>
> 3. We will not pay for loss or damage caused by or resulting from any of the following **B.3.a.** through **B.3.c.** But if an excluded cause of loss that is listed in **B.3.a.** through **B.3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
> > **a. Weather Conditions**
> > Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.
>
> . . .

**c. Negligent Work**
Faulty, inadequate or defective:

. . .

(4) Maintenance; of part or all of any property on or off the described premises.

On January 18, 2017, ABK discovered water infiltrating multiple underground storage tanks ("USTs") on its property. ABK contacted its servicer, Coeur d'Alene Service Station Equipment, Incorporated ("CDASSE"), to remediate the damage. At the initial visit, CDASSE noted: "the ATG [(automatic tank gauging)] probe manholes on each UST were full of ice and water." That same day CDASSE replaced the seal caps located on the top of the riser for the ATG probe on the diesel and premium unleaded USTs. A few days later CDASSE observed that the "vapor recovery manholes were full of ice" and that "[t]he seal cap on the regular unleaded vapor recovery riser was cracked and the plunger on the adaptor was not sealing." Phase separation[1] was detected in both the regular unleaded and premium unleaded USTs on January 23, 2017. CDASSE purged the product lines, removed the vapor recovery adapters from the USTs and installed new cap seals on the risers. The phase separated regular unleaded and premium unleaded gasoline was pumped out of the USTs and disposed of. Despite these repairs and the purging of the tainted gas, phase separated gasoline was again discovered two days later. On January 31, 2017, Northwest Environmental Solutions Incorporated performed leak testing on the tanks and ultimately determined there were no leaks in the USTs. Even so, ABK reported two additional instances of water infiltration on February 10, 2017, and February 17, 2017.

After the initial water infiltration, ABK submitted a claim to Mid-Century for the cost of repairing the USTs and for the loss of business during the time the USTs were inoperative. Mid-Century enlisted Envista Forensics to complete a desk review of the claim. Timothy Hurley, the engineer assigned, reviewed the multiple pressure and leak tests completed after water infiltrated the USTs and reviewed the invoices from CDASSE detailing the work that had been performed to date. In a report dated February 20, 2017, Hurley concluded that water likely infiltrated the system because of "multiple maintenance related issues with the regular unleaded and premium unleaded riser cap seals and vapor adapters. . . ." Relying on Hurley's review, Mid-Century

---

[1] In the desk review completed by Envista Forensics, Timothy Hurley explained that "[p]hase separation is when the ethanol within ethanol blended gasoline attaches itself to water molecules. As a result there will be a layer of gasoline at the top and a water/ethanol layer settled at the bottom of the tank. The gasoline layer rests on top of the water/ethanol layer because gasoline is less dense than the water/ethanol blend."

denied ABK's claim finding the Policy excluded coverage for damage caused by or resulting from wear and tear or faulty or inadequate maintenance. The denial letter also stated "though only parts of your policy are mentioned and quoted in th[e] letter, additional portions may apply. If they are found to be relevant and applicable, they will be applied."

On April 11, 2017, Don Boyd, an estimator with CDASSE, sent a letter to ABK detailing his review of the incident. Boyd assumed "water entered the Unlead and Premium tanks when the area over the fill buckets, stage one vapor caps and ATG caps [were] flooded with surface water." He explained further how "the stage one vapor adaptors were compromised by the force of the ice that was still in place during the first initial good thaw of 2017." Boyd continued:

> After the first round of phase separated fuel was removed and water continued to enter the system without surface water and the stage one vapor lines being capped off it is a possible combination of below surface runoff water during excessive thawing and abnormal moisture content in the ground running into the below grade portion of the Unlead spill bucket. . . .

Boyd also explained that after the second purging of the contaminated gasoline, the premium unleaded UST settled and stayed water free, but the unlead UST continued to take on water. The unlead spill bucket was then replaced and it was Boyd's understanding that the unlead tank stayed water free after this repair—leading Boyd to conclude "water was entering the tank from below grade of the spill bucket, 3" vapor line quit burping static water and ground water from run off had about run its course."

After ABK's claim was denied, ABK filed a complaint alleging breach of contract and bad faith against Mid-Century. Mid-Century filed a motion for summary judgment requesting the district court dismiss ABK's claims. According to Mid-Century, there was no breach of contract because ABK's damages were excluded from coverage under the Policy. Mid-Century argued the damages were excluded under the negligent maintenance, wear and tear, water, and weather conditions exclusions. Mid-Century then argued the bad faith claim should also be dismissed because without coverage there can be no bad faith. The district court found a genuine dispute existed over whether the damage stemmed from inadequate maintenance or wear and tear. But the district court granted summary judgment for Mid-Century finding no breach of contract because ABK's damages were barred from coverage under the Policy's water and weather conditions exclusions. The district court also granted summary judgment for Mid-Century on

4

ABK's bad faith claim finding ABK failed to establish coverage. ABK filed a motion for reconsideration which the district court denied. This appeal followed.

## III. ISSUES ON APPEAL

**1.** Whether the district court's grant of summary judgment for Mid-Century on ABK's breach of contract claim was erroneous.

    a. Whether the district court erred in determining that ABK's damages were excluded under the water exclusion.

    b. Whether the district court erred in determining that ABK's damages were excluded under the weather conditions exclusion.

    c. Whether the district court erred in declining to perform an efficient proximate cause analysis.

**2.** Whether the district court's grant of summary judgment for Mid-Century on ABK's bad faith claim was erroneous.

## IV. STANDARD OF REVIEW

"When this Court reviews an order for summary judgment, it applies the same standard of review used by the district court in ruling on the motion." *McGimpsey v. D&L Ventures, Inc.*, 165 Idaho 205, 210, 443 P.3d 219, 224 (2019). "Summary judgment is proper when the 'pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009). This Court:

> [M]ust construe the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in that party's favor. If reasonable people could reach different conclusions or inferences from the evidence, the motion must be denied. However, the nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to withstand summary judgment. A mere scintilla of evidence or only slight doubt as to the fact is not sufficient to create a genuine issue of material fact for purposes of summary judgment. Instead, the nonmoving party must respond to the summary judgment motion with specific facts showing there is a genuine issue for trial.

*Id*. (internal citations omitted). The party moving for summary judgment bears the burden of establishing the lack of a genuine issue of material fact. *Id*. (citing *Finholt v. Cresto*, 143 Idaho 894, 896, 155 P.3d 695, 697 (2007)).

## V. ANALYSIS

ABK appeals the district court's grant of summary judgment in favor of Mid-Century on the breach of contract and bad faith claims. ABK argues the district court erred in finding ABK's

5

damages were excluded from coverage under the water and weather conditions exclusions. Relying solely on this theory, ABK argues the district court erred in dismissing the bad faith claim finding ABK failed to establish coverage. We affirm the district court's grant of summary judgment in favor of Mid-Century on both the breach of contract and bad faith claims.

**A. The district court's grant of summary judgment in favor of Mid-Century on ABK's breach of contract claim was not erroneous because ABK's damages were barred from coverage under the Policy's water and weather conditions exclusions.**

The district court granted summary judgment for Mid-Century on the breach of contract claim after finding ABK's damages were barred from coverage under the water and weather conditions exclusions. On reconsideration, the district court reaffirmed its holding and declined to perform an efficient proximate cause analysis, as ABK requested. ABK argues the district court erred in three ways. First, ABK argues the district court improperly weighed the evidence to conclude that the source of the water was surface water. ABK alleges the district court failed to consider its evidence that the source of water infiltration was ground water, not surface water. Second, ABK argues the district court erred in finding Mid-Century satisfied its burden of showing ABK's damages were excluded under the water or weather conditions exclusion. As for the water exclusion, ABK argues Mid-Century failed to show that surface water was the exact cause of the damage. In regards to the weather conditions exclusion, ABK argues the exclusion cannot be applied in isolation. Lastly, ABK argues the district court erred by not performing an efficient proximate cause analysis when the district court recognized there could be more than one cause of the damage ABK suffered.

On the other hand, Mid-Century argues the Policy unambiguously excludes damage caused by surface water, which was the unrefuted cause in the case. Mid-Century further argues the ground water exclusion, an alternative basis in denying coverage, applies because any ground water that contributed to the damage derived from surface water. Mid-Century also argues the Policy excludes ABK's damages under the weather conditions exclusion because melting snow is a weather condition. As for the efficient proximate cause argument, Mid-Century maintains ABK failed to preserve the issue of whether an analysis was necessary because ABK raised the issue for the first time in its motion for reconsideration. In any event, Mid-Century argues the efficient proximate cause analysis does not apply because Idaho has yet to adopt the rule and this case does not warrant adoption because the parties contracted out of its application.

"When interpreting insurance policies, this Court applies the general rules of contract law subject to certain special canons of construction." *Clark v. Prudential Prop. & Cas. Ins. Co.*, 138 Idaho 538, 540, 66 P.3d 242, 244 (2003).

> [T]he first step is to determine whether or not there is an ambiguity. Determining whether a contract is ambiguous is a question of law upon which this Court exercises free review. Where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used. Where the policy is reasonably subject to differing interpretations, the language is ambiguous and its meaning is a question of fact. To determine the meaning of an ambiguous contract, the trier of fact must determine what a reasonable person would have understood the language to mean and the words used must be construed given their ordinary meaning.

*Id.* at 540–41, 66 P.3d at 244–45 (internal citations omitted). Additionally, "because insurance policies are contracts of adhesion, not typically subject to negotiation between the parties, ambiguities must be construed most strongly against the insurer." *Id.* at 541, 66 P.3d at 54. The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage and exclusions not stated with specificity will not be presumed or inferred. *Id.; see also Perry v. Farm Bureau Mut. Ins. Co. of Idaho*, 130 Idaho 100, 103, 936 P.2d 1342, 1345 (1997) ("[A]n insurance policy will generally be construed so that the insurer bears the burden of proving that the asserted exclusion is applicable.").

    a.  <u>The district court did not err in concluding ABK's damages were barred from coverage under the water exclusion.</u>

The district court did not err in concluding ABK's damages were barred from coverage under the water exclusion because it is undisputed that water caused the damage. The Policy provides Mid-Century will not pay for loss or damage caused directly or indirectly by:

(1) Flood, surface water, waves, tides, tidal waves, overflow or any body of water, or their spray, all whether driven by wind or not;

. . .

(4) Water under the ground surface pressing on, or flowing or seeping through:
    (a) Foundations, walls, floors or paved surfaces:
    (b) Basements, whether paved or not; or
    (c) Doors, windows or other openings.

The water exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." The district court found the Policy was unambiguous and neither party disputes that finding. As a result, coverage under the Policy is to be determined according to the plain meaning of the words used. *Clark,* 138 Idaho at 541, 66 P.3d at 245. A clear reading

of the unambiguous Policy provides damage caused by surface water or water under the ground[2] when flowing or seeping through other openings is excluded from coverage.

The meaning of surface water is clear and unambiguous. *Rizzo v. State Farm Ins. Co.*, 155 Idaho 75, 82, 305 P.3d 519, 526 (2013). *Rizzo* defines surface water as: "water diffused over the surface of the land. Any water on the earth's surface, including water from rising groundwater, may be surface water unless or until it forms some more definite body of water. Typically, surface water is created by rain or other precipitation." *Id*. Similarly, Black's Law Dictionary defines surface water as "[w]ater lying on the surface of the earth but not forming part of a watercourse or a lake. Surface water most commonly derives from rain, springs, or *melting snow*." *Surface Water*, BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis added). Other jurisdictions consider runoff to be another term for surface water. *See Georgetowne Square v. U.S. Fid. & Guar. Co.*, 523 N.W.2d 380, 386 (Neb. Ct. App. 1994) ("Based upon our review of the available law and technical definitions, we find that runoff is merely another term for surface water."). It is then concluded that "runoff water is water which flows naturally over the surface of the ground rather than under it and that runoff is just another word for 'diffused surface water.' " *Id*. at 385.

Here, ABK failed to sufficiently dispute that a cause of its damage was water that accumulated from melted snow above the USTs. When ABK first reported the loss to Mid-Century, ABK stated that melting snow got into the gas tank. ABK also said it "had accumulated a lot of snow prior to January 18th and the fugitive water/phase separation was detected when the snow started to melt." Based on ABK's initial report, Mid-Century hired Hurley to perform a desk review where Hurley opined "[w]ater can infiltrate the UST's [sic] if standing water was puddling above the manholes (fill buckets, vapor risers and ATG probe risers) when the seals on the fill bucket caps, drain plugs and vapor adaptors are in disrepair" as was the case here. CDASSE estimator Boyd also performed a review of the incident and reported "[i]t is assumed water entered the Unlead and Premium tanks when the area over the fill buckets, stage one vapor caps and ATG caps were flooded with surface water." These statements support a conclusion that melted snow began to puddle above the USTs and it was that same water, or some form of it,

<hr />

[2] We reference "ground water" based on the Policy's language and particular exclusion for "ground water." Our discussion should not be construed as a statement on general ground water principles, *per se*, nor should it be viewed as having any application beyond our construction of the contractual language at issue in this case.

8

that caused or contributed to the water infiltration. Thus, no genuine dispute exists in the record over the fact that surface water was *a* cause of the damage. Based on these facts standing alone, ABK's damages were barred under the water exclusion.

Even so, ABK maintains the district court's finding that the damages were barred from coverage under the water exclusion was erroneous because the district court failed to consider evidence that the source of the water infiltration was ground water, not surface water. According to ABK, this differentiation is important because the ground water exclusion only applies when ground water is flowing through or seeping through other openings. ABK argues the cracks in the USTs are not "other openings" and thus the ground water exclusion does not apply. ABK relies on Boyd's report to support its theory. Boyd opined:

> After the first round of phase separated fuel was removed and water continued to enter the system without surface water and the stage one vapor lines being capped off it is a possible combination of below surface runoff water during excessive thawing and abnormal moisture content in the ground running into the below grade portion of the Unlead spill bucket that is not visible to the eye. . . .
> . . .
> It is our understanding the Unlead tank settled down and stayed water free coming to the conclusion that water was entering the tank from below grade of the spill bucket, 3" vapor line quit burping static water and ground water from run off had about run its course.

We find ABK's argument unpersuasive for three reasons. First, the evidence submitted by ABK does not establish a genuine issue of material fact about whether surface water was a cause of the damage. Second, the Policy's language provides that if the damage is excluded under the water exclusion, it is irrelevant whether any other (i.e., ground water) cause contributed to the damage. Third, the Policy is unambiguous and canons of construction are unnecessary in interpreting it.

As to the first point, Boyd explained "[a]fter the first round of phase separated fuel was removed and water continued to enter the system without surface water . . . it is a possible combination of below surface runoff water during excessive thawing" that caused water to continue to enter the USTs. Boyd concluded "water was entering the tank from below grade of the spill bucket, 3" vapor line quit burping static water and ground water from run off had about run its course." Runoff is simply another term for surface water. *See Georgetowne Square,* 523 N.W.2d at 386. Even more, Boyd's statements suggest that even if "below grade" water were the cause, that water accumulated "from run off" that had run its course. This statement leads to only one reasonable inference: any below grade water that entered the tanks originated from surface

water that had run its natural course. *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009) ("This Court must construe the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in that party's favor . . . If reasonable people could reach different conclusions or inferences from the evidence, the motion must be denied."). ABK presented no other evidence of *ground water* entering the USTs other than what came from the surface water caused by melting snow. The evidence thus provided by ABK is insufficient to raise a genuine dispute as to the fact that surface water was a cause of the water infiltration and ABK's damages were excluded under the surface water exclusion.

Second, when anticoncurrent causation[3] language is used in an insurance policy, an insurer need only show an excluded cause is *a* cause of the damage, not *the only or sole* cause. *See Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 971 (D.C. 1999). In *Cameron*, an insured submitted a claim to its insurer after its basement was heavily damaged by flooding. *Id.* at 966. Upon further review, the cause of the damage was found to be surface water that had accumulated after heavy rainfall and snowmelt. *Id.* The insurance policy with language identical to the Policy here, stated " '[w]e do not insure for loss caused directly or indirectly by [surface water],' and that '[s]uch loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.' " *Id.* at 971, n. 7. The insured argued the surface water exclusion did not apply because the damage would not have resulted but for the gutters on the home being damaged. *Id.* at 971. The District of Columbia Court of Appeals recognized other potential causes could have led to the damage, such as the broken gutters, but ultimately held the loss was not covered because some of the loss was caused by surface water. *Id.* That other factors contributed to the loss was of no consequence under the policy's language. *Id.*

A similar case with a similar result is *Casey v. General Accident Insurance Company*, 178 A.D.2d 1001 (NY App. Div. 1991). In *Casey*, it was undisputed the water that accumulated in a backyard was surface water. *Id.* at 338. The court then held:

> The fact that other factors, such as a clogged drain and a sloped roof, may have contributed to the loss is of no consequence under the language of the policy.

---

[3] "An anticoncurrent causation clause . . . in an insurance policy states that where a property loss is caused by a combination of excluded and covered perils, the entire loss is excluded from coverage." Dale Joseph Gilsinger, Annotation, *Validity, Construction, and Application of Anticoncurrent Causation Clauses in Insurance Policies*, 37 A.L.R.6th 657 §2 (2008).

While the clogged drain certainly contributed to the loss, the actual cause of the loss was the presence of surface water. Since the policy expressly excluded any loss "caused directly or indirectly" by surface water "regardless of any other cause or event contributing concurrently or in any sequence to the loss", [sic] we grant judgment declaring that the exclusion is applicable as a matter of law.

*Id*.

The analyses from *Cameron* and *Casey* apply here. As mentioned previously, the Policy is unambiguous. Thus, the language is to be construed given its plain meaning. *Clark,*138 Idaho at 541, 66 P.3d at 245. The Policy states: "[w]e will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Even assuming the evidence produced by ABK was enough to show ground water was a cause of the damage, it would be irrelevant because the record provides surface water was *a* cause. Like *Cameron* and *Casey*, policies with language identical to the language in the Policy here, even where other potential causes lead to or contribute to the damage, the loss will not be covered where some of the loss was caused by an excluded peril such as surface water. Thus, the fact that independent ground water could have contributed to the loss was of no moment under the Policy because surface water was *a* cause of ABK's damages.

Last, ABK maintains ground water is only excluded if it is flowing through or seeping through other openings. According to ABK, the cracks in the USTs are not "other openings" under the doctrine of *noscitur a sociis*.[4] That said, the Policy is unambiguous. Canons of construction are to be used to assist in contract interpretation only where an ambiguity exists. *See Mut. of Enumclaw Ins. Co. v. Roberts*, 128 Idaho 232, 235–36, 912 P.2d 119, 122–23 (1996) (finding provisions in an insurance policy were not ambiguous; the Court thus did not use canons of construction to construe the policy). Therefore, the use of *noscitur a sociis* as suggested by ABK is unwarranted. *Id*. An opening is plainly defined as "an aperture or gap, esp[ecially] one allowing access." *Opening*, NEW OXFORD AMERICAN DICTIONARY (3rd ed. 2010). It is undisputed that water infiltrated the USTs through cracks in the vapor riser caps and a crack in the spill bucket. These cracks permitted water to access the USTs. So even if below grade water,

---

[4] The doctrine of *noscitur a sociis* is defined as "[a] canon of construction holding that the meaning of an unclear word or phrase, especially one in a list, should be determined by the words immediately surrounding it." *Noscitur a Sociis*, BLACK'S LAW DICTIONARY (10th ed. 2014).

and not surface water, was the cause of the damage, the damage would still be excluded from coverage because ground water seeped through openings in the USTs to cause the damage.

In summary, the district court did not err in finding ABK's damages were barred from coverage under the water exclusion. Uncontroverted evidence was produced that surface water was a cause of the damage. The Policy unambiguously excludes damage caused by surface water. The evidence produced by ABK did not show that ground water independent of or unrelated to surface water contributed to the damage. Indeed, the record establishes that even if below grade water contributed, that water derived from surface water that had accumulated from melting snow runoff. Further, assuming *arguendo* that ground water was an independent cause, water under the ground is still an excluded peril under the Policy because water infiltrated the tanks through the cracks in components of the USTs which are considered other openings under the Policy's plain language. Thus, we affirm the district court's finding that ABK's damages were barred from coverage under the water exclusion.

     b. <u>The district court did not err in finding ABK's damages were barred from coverage under the weather conditions exclusion.</u>

The district court found ABK's damages were also barred from coverage under the weather conditions exclusion. The district court found the weather conditions exclusion applicable because heavy snowfall lead to heavy snowmelt which caused surface water to accumulate above the USTs and eventually led to the water infiltration. ABK maintains the water exclusion does not apply here. Based solely on this theory, ABK argues it was improper for the district court to find the weather conditions exclusion applicable because the exclusion cannot be applied as a standalone provision. Alternatively, ABK argues even if the weather conditions exclusion applied, weather resulted in a covered cause of loss and therefore ABK's damages would be covered under the Policy.

The Policy states that Mid-Century will not pay for "loss or damage caused by or resulting from any of the following . . . But if an excluded cause of loss that is listed . . . results in a Covered Cause of Loss, [Mid-Century] will pay for the loss or damage caused by the Covered Cause of Loss." One of the exclusions listed is the weather conditions exclusion. The Policy elaborates, "[b]ut th[e weather conditions] exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage." The water exclusion is enumerated in Paragraph 1.

ABK's argument rests solely on attacking the district court's holding that ABK's damages were barred from coverage under the water exclusion. Because we hold that the district court was correct in finding ABK's damages were barred from coverage under the water exclusion, its argument about the weather exclusion likewise evaporates. The district court did not apply the weather conditions exclusion in isolation. Instead, the district court applied the exclusion along with the water exclusion. Here, it is undisputed the cause of loss was water, an excluded peril. Indeed, ABK conceded below "[t]he loss in this case (gas contamination) was *caused* by water." Therefore, we hold the district court did not err in finding ABK's damages were barred from coverage under the weather conditions exclusion because the exclusion was not applied in isolation and weather resulted in an excluded, not covered, cause of loss.

 c. <u>The district court did not err in declining to perform an efficient proximate cause analysis.</u>

ABK argues the district court erred in failing to perform an efficient proximate cause analysis. According to ABK, an efficient proximate cause analysis was triggered by the district court's acknowledgment that there may have been more than one cause of the water infiltration. ABK maintains failing to perform an analysis was erroneous because whether a cause is the efficient proximate cause of a loss is a question of fact for the jury to decide. In response, Mid-Century argues ABK failed to preserve the issue of whether an efficient proximate cause analysis was warranted because the issue was not raised until ABK's motion for reconsideration. In the alternative, Mid-Century contends if the issue was preserved, an efficient proximate cause analysis is unnecessary because Idaho has not adopted the efficient proximate cause rule and there is no need for this Court to adopt the rule because the parties contracted out of its application.

"This Court will not consider issues raised for the first time on appeal." *Mickelsen Constr., Inc. v. Horrocks*, 154 Idaho 396, 405, 299 P.3d 203, 212 (2013). "Issues not raised below will not be considered by this [C]ourt on appeal, and the parties will be held to the theory upon which the case was presented to the lower court." *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (quoting *Heckman Ranches, Inc. v. State, By & Through Dep't of Pub. Lands*, 99 Idaho 793, 799–800, 589 P.2d 540, 546–47 (1979)). Further, "[t]his Court has held that an issue may be considered waived if raised for the first time in a motion for

reconsideration." *AIA Servs. Corp. v. Idaho State Tax Comm'n*, 136 Idaho 184, 188, 30 P.3d 962, 966 (2001) (citing *State v. Rubbermaid, Inc.*, 129 Idaho 353, 357, 924 P.2d 615, 619 (1996)).

ABK mentioned efficient proximate cause for the first time in its memorandum in support of its motion for reconsideration. There, ABK stated:

> Moreover, if surface water did infiltrate the system, according to Mr. Hurley it was only possible for that to occur if the caps, seals and riser caps were in disrepair. Therefore, assuming that surface water was the source and that the system was in disrepair, the efficient proximate cause was the disrepair. See, [sic] *Allstate Ins. Co. v. Smith*, 929 F.2d 447 (1991) (efficient proximate cause of damages was roofing contractor's failure to tarp roof, rather than rain), [sic]. However, the efficient proximate cause of a loss can only be determined as a matter of law when the facts are settled and not in dispute. *Id*. Cracked caps, seals or riser covers are not excluded perils, unless they came into that condition as a result of faulty maintenance of wear and tear. The Court determined that there was evidence that precluded summary judgment on the latter exclusions. Therefore, if surface water entered the UST systems as a result of the caps, seals or risers, then summary judgment based on the surface water exclusion is improper.

Mid-Century countered arguing the parties contracted out of an efficient proximate cause analysis. In its reply, ABK then discussed the efficient proximate cause rule in depth arguing Mid-Century cannot circumvent the rule by drafting creative exclusionary clauses. The district court acknowledged ABK's argument but declined to perform such an analysis. Although ABK raised the issue below for the first time in its motion for reconsideration, we hold the issue was not waived because Mid-Century responded to the argument and the district court ultimately considered the issue. According to our holding in *AIA*, 136 Idaho at 188, 30 P.3d at 966, "an issue *may* be considered waived if raised for the first time in a motion for reconsideration." This makes such a waiver discretionary. Since the district court considered the merits of the issue, we will likewise reach the merits of ABK's argument on appeal.

The district court did not err in declining to perform an efficient proximate cause analysis because the parties contracted out of its application. Efficient proximate cause is described as follows:

> "[W]hen a loss is sustained by a sequence or concurrence of at least two causes, one covered under [an insurance] policy and the other excluded under the policy, the cause setting the chain of events in motion is the cause to which the loss is attributed . . ." Other courts have defined efficient proximate cause to mean the predominant cause, rather than the cause which is first in time.

14

*C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1228 (Alaska 2000). "The efficient proximate cause doctrine is generally recognized as the universal method for resolving coverage issues involving the concurrence of covered and excluded perils." *W. Nat. Mut. Ins. Co. v. Univ. of N.D.*, 643 N.W.2d 4, 12 (N.D. 2002). Even so, "changes in standard policy forms exclude certain perils from coverage if they are a cause of loss, regardless of any other perils acting 'concurrently or any sequence with' them." *W. Nat. Mut.*, 643 N.W.2d. at 12; *see also Alf v. State Farm Fire Ins. & Cas. Co.*, 850 P.2d 1272, 1275 (Utah 1993) ("An insurer may exclude from coverage certain losses by using language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided."). Additionally, courts may not rewrite an insurance contract for the parties if the language is clear and unambiguous even if the language seems harsh or inequitable. *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 346, 233 P.3d 1221, 1268 (2010); *see also Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 41, 72 P.3d 877, 881 (2003).

The district court found the Policy to be clear and unambiguous and neither party disputed this finding. Thus, the Policy must be applied as written according to the plain meaning of the words used. *See Farm Bureau Mut. Ins. Co. of Idaho v. Eisenman*, 153 Idaho 549, 552, 286 P.3d 185, 188 (2012) ("In interpreting an insurance policy, 'where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used.' "). The Policy contains an anticoncurrent causation clause that states Mid-Century "will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Anticoncurrent causation clauses are enforceable when plain and unambiguous. *See Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 430 (5th Cir. 2007) (holding an anticoncurrent causation clause was enforceable and not subject to interpretation because the language was not ambiguous). On reconsideration, the district court reaffirmed its holding that "Mid-Century's water exclusion is clear, precise, and unambiguous, and the Court must apply it as a matter of law to exclude coverage for the damaged caused by the water infiltration." The fact that surface water was a cause of ABK's damages was unrefuted. In fact, CDASSE noted in its initial visit to the USTs that "the ATG probe manholes on each UST were full of ice and water." Based on these admitted facts and the Policy's anticoncurrent causation language, the district court found it unnecessary to undertake

an efficient proximate cause analysis. We agree with the district court's determination that unrefuted facts established that ABK's damages were excluded because they were caused by water and weather conditions. Further, the Policy is unambiguous and thus, we also agree an efficient proximate cause analysis was unnecessary because the parties contracted out of its application. Therefore, we hold the district court did not err in declining to perform an efficient proximate cause analysis.

**B. The district court's grant of summary judgment in favor of Mid-Century on ABK's bad faith claim was not erroneous because ABK failed to establish its damages were covered under the Policy.**

The district court granted summary judgment for Mid-Century on ABK's bad faith claim because ABK failed to establish its damages were covered under the Policy. In so deciding, the district court relied on case law establishing that coverage under an insurance policy is fundamental to a successful bad faith claim. ABK again maintains the district court erred in finding ABK's damages were excluded from coverage under the water and weather conditions exclusions. On the other hand, Mid-Century argues the dismissal was proper because the district court did not err in concluding ABK's damages were barred under the Policy. Additionally, Mid-Century points out that ABK does not appeal the district court's rationale that coverage must exist for a successful bad faith claim but instead attacks the district court's underlying holding that the Policy does not afford coverage.

There is a duty of good faith and fair dealing inherent in every contract. *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 96, 730 P.2d 1014, 1016 (1986). "[A]ll courts are agreed that the insurer does owe to the insured some duty in this respect." *Id*. This duty exists in the context of first party situations. *Id*. (explaining the duty of good faith and fair dealing applies "when the insured is personally filing a claim for benefits against the insurer under the policy[.]"). A plaintiff has an independent action in tort when this duty is breached which this Court recognizes as the tort of bad faith. *Id*. at 97, 730 P.2d at 1017.

A successful bad faith claim requires the insured to show: "1) the insurer intentionally and unreasonably denied or withheld payment; 2) the claim was not fairly debatable; 3) the denial or failure to pay was not the result of a good faith mistake; and 4) the resulting harm is not fully compensable by contract damages." *Harmon v. State Farm Mut. Auto. Ins. Co.*, 162 Idaho 94, 102, 394 P.3d 796, 804 (2017). "Fundamental to the claim of bad faith is the idea that there must be coverage of the claim under the policy." *Robinson v. State Farm Mut. Auto. Ins. Co.*,

16

137 Idaho 173, 178, 45 P.3d 829, 934 (2002) (explaining that a plaintiff has the burden of establishing coverage under a policy to prevail on a bad faith claim even if claim is paid).

ABK must show coverage under the Policy to establish a successful bad faith claim. *See Robinson*, 137 Idaho at 178, 45 P.3d at 934. It cannot do so; therefore, we hold the district court was correct to dismiss the bad faith claim.

## VI. CONCLUSION

We affirm the district court's grant of summary judgment in favor of Mid-Century on ABK's breach of contract and bad faith claims. Costs on appeal are awarded to Mid-Century as the prevailing party.

Chief Justice BURDICK, Justices BRODY, STEGNER and MOELLER, CONCUR.